338 So.2d 645 (1976)
STATE of Louisiana
v.
Billy Ray OWENS and Bobby Ray Young.
No. 57803.
Supreme Court of Louisiana.
October 6, 1976.
Rehearing Denied November 5, 1976.
*647 Robert E. Piper, Jr., Piper & Brown, Shreveport, for Bobby Ray Young.
Samuel P. Love, Jr., Love, Rigby, Dehan & Love, Shreveport, for Billy Ray Owens.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., B. Woodrow Nesbitt, Jr., Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
In the early morning of April 3, 1975 Emanuel Triggs, Ernest Jones and Cedric Sloan were together at a bar called the Afro Scene. Also present was another group of persons including Billy Ray Owens, Theardis Owens, Bobby Ray Young, Calvin Young, Charles J. Young and Melvin DuBois. When Triggs, Sloan and Jones left the Afro Scene shots were fired at them by someone in the other group. Triggs, Sloan and Jones proceeded to the Harlem House Restaurant in Shreveport. They were followed there by the second group of youths. At approximately 2:30 a.m. Billy Ray Owens went into the Harlem House and began speaking to Triggs. At this point, someone in the doorway of the restaurant yelled "Let's burn this S.O.B." and Bobby Ray Young began firing into the restaurant. Cedric Sloan and Ernest Jones were hit by bullets.
Billy Ray Owens, Theardis Owens, Melvin DuBois, Charles Young and Calvin Young were all apprehended that same night in the 1962 Chevrolet they were seen leaving the restaurant in. Two days later Bobby Ray Young was apprehended. On April 8, 1975 Bobby Ray Young, Billy Ray Owens, Theardis Owens, Calvin Young and Charles J. Young were all charged jointly by bill of information with the attempted second degree murder of Cedric Sloan. Subsequently, the trial of Bobby Ray Young and Billy Ray Owens was severed from that of the other defendants. By a unanimous verdict a jury found these two defendants guilty of attempted second degree murder. Subsequently, each defendant was sentenced to twelve years at hard labor. From this conviction and sentence these defendants appeal.
*648 Defendant Owens
Assignment of Error No. 5 was specifically waived.

Assignment of Error No. 1
Defendant contends that the trial court erred in allowing photographs of the scene of the crime to be introduced into evidence because the State had failed to lay a proper foundation for the introduction of the photos. The defendant alleges that the lack of proper foundation is demonstrated by the fact that the photographer was not called as a witness, the date on which the pictures were taken was not established and no chain of possession of the photos was established. While the photographer did not testify, the owner of the Harlem House Restaurant, who was at the scene of the crime soon after the incident occurred and was present during the taking of the pictures, testified that the pictures correctly represent the appearance of the restaurant at that time. A sufficient foundation was laid for the introduction of the pictures. State v. Forbes, 310 So.2d 569 (La.1975); State v. Franks, 284 So.2d 584 (La.1973). This assignment lacks merit.

Assignment of Error No. 2
In this assignment the defendant objected to the introduction into evidence of the transcribed testimony of an absentee, Emanuel Triggs, which testimony had been given at the preliminary hearing in this case. Mr. Triggs was present in the Harlem House Restaurant at the time of the shooting and was allegedly the individual whom the defendants originally intended to shoot. After the preliminary hearing, Triggs had been placed in the Caddo Correctional Institute where he was personally served with a subpoena for this trial, but on September 1, 1975, seven days prior to trial, he escaped and had not been apprehended when trial began. Before admitting the transcribed testimony, the trial judge conducted a lengthy examination of local police officers to determine whether they had diligently attempted to locate the absent witness in order to have him personally appear at trial. The testimony of the officers indicates: that a thorough search was undertaken; a warrant was issued and copies of his picture were given to deputies who searched for the witness; the help of the Dallas, Texas police department was enlisted when information indicated that he might be in their jurisdiction. In addition, on September 8, the trial judge issued a bench warrant for Triggs' arrest. The trial judge determined that the State had exercised due diligence in attempting to locate Mr. Triggs.
The pertinent portion of C.Cr.P. 295 provides:
"The transcript of the testimony of any other witness who testified at the preliminary examination is admissible for any purpose in any subsequent proceeding in the case, on behalf of either party, if the court finds that the witness is dead, too ill to testify, absent from the state, or cannot be found, and that the absence of the witness was not procured by the party offering the testimony." (Emphasis added).
Clearly here the witness could not be located and the trial judge found, and the record demonstrates, that the absence of the witness was not procured by the State. In addition, both defendants were represented by counsel at the preliminary hearing. The trial judge was correct in ruling that the witness was unavailable to testify and in admitting the transcribed testimony. The defendant's right to confront the witness was not abridged. State v. Thomas, 290 So.2d 690 (La.1974). This assignment lacks merit.
Assignment of Error No. 3
The defendant contends that the trial court erred in failing to grant a mistrial after the prosecutor continually asked repetitious questions and led his witnesses. Defendant alleges that such conduct was highly prejudicial to him. The defendant does not specify what questions he found objectionable nor in what ways he was prejudiced by the prosecutor's conduct. Since no prejudice is demonstrated or evident in the *649 record, we cannot say that the trial judge erred in refusing to grant a mistrial. C.Cr.P. 921.
Assignments of Error Nos. 4 and 7
In these assignments the defendant objects to the introduction into evidence of a pistol on the grounds that no proper foundation was laid, the pistol was not identified as being located at the scene of the crime, and there was no demonstration of ownership of the pistol by the defendant. This court has often held that the lack of identification, chain of custody and connexity of physical evidence is a matter for determination by the jury, so long as the evidence is shown to be reasonably connected with the defendant or the crime and has some relevancy warranting its introduction. State v. Batiste, 318 So.2d 27 (La.1975); State v. Gladden, 260 La. 735, 257 So.2d 388 (1972); State v. Dotson, 260 La. 471, 256 So.2d 594 (1971).
Here, Deputy Johnnie Battle, the officer who arrested this defendant, testified that he found the pistol within twenty-five feet of where the defendant had been arrested and he identified the gun in court as the one he had found on the night of the arrest. A sufficient identification had been made and any lack of connection between the defendant and the gun was a matter for the jury to consider in giving weight to the evidence. These assignments lack merit.
Assignment of Error No. 6
The defendant contends that the trial court erred in refusing to grant a mistrial when evidence was elicited in reference to the shooting of one Ernest Jones. The witness, Ernest Jones, was in the Harlem House Restaurant at the time the shooting occurred. It was the State's theory of the case that the defendants in fact intended to shoot Emanuel Triggs, but mistakenly hit Jones and the victim Sloan. The shooting of Sloan was the offense for which the defendants were being tried in this case. The shooting of Jones occurred at precisely the same time and place as the crime at issue here. R.S. 15:447 and 15:448 provide:
"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence."
"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction."
The shooting of Jones was clearly a part of the res gestae and therefore admissible. State v. Kaufman, 331 So.2d 16 (La.1976); State v. Leichman, 286 So.2d 649, cert. den. 420 U.S. 907, 95 S.Ct. 824, 42 L.Ed.2d 836 (1973). In addition, in order to avoid any undue prejudice to the defendants, the trial judge instructed the jury both during the witness' testimony and again in his charge to the jury that the defendants were not on trial for the shooting of the witness, Jones, and could not be convicted for that shooting. There was no error in admitting this testimony.
Assignment of Error No. 8
In this assignment the defendant contends that the trial court erred in allowing the witness, Raymond Cooper, to be accepted as an expert witness in the field of firearms identification. Mr. Cooper testified that he was a criminalist at the Northwest Crime Lab and that he had worked there for three years specializing in firearms identification. He was awarded two degrees from Louisiana Techa Bachelor of Science Degree in Agronomy and a Master of Science Degree in Microbiology. He holds no degree in criminology nor had he taken any courses in that area. He had acquired his expertise in firearms identification through his practical experience working for the lab and as an apprentice to *650 Mr. Roy Herd,[1] the director of the crime lab. Mr. Cooper had testified as an expert in firearms identification from eight to ten times in the courts of Caddo, Winn and Grant Parishes. The trial court has wide discretion in determining the competence of an expert witness. State v. Grove, 306 So.2d 308 (La.1975); State v. Thorson, 302 So.2d 578 (La.1974), and the discretion of the trial court will not be disturbed in the absence of abuse. State v. Richmond, 278 So.2d 17 (La.1973). In addition, this court has held that the lack of courses in criminology is not sufficient to disqualify a witness as an expert in the field. State v. Ledet, 298 So.2d 761 (La.1974). There was no abuse of discretion here. This assignment lacks merit.
Assignments of Error Nos. 9, 10 and 11
Theardis Owens, the brother of the defendant, was called as a witness for the defense. Theardis Owens had originally been charged with attempted second degree murder, along with his brother, by bill of information. The trial of Theardis Owens was severed from the instant case before trial. Theardis Owens testified that neither he nor his brother was in the Harlem House Restaurant at the time of the shooting. On cross-examination the prosecutor asked the witness the following question:
"Now, sir, if your brother is found not guilty do you expect to be prosecuted for this offense?"
The witness answered that he did not expect to be prosecuted if his brother was acquitted. Defense counsel had objected to the question and moved for a mistrial. R.S. 15:492 provides:
"When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same."
By eliciting the testimony that the witness felt that he would not be prosecuted if his brother was found not guilty, the State was attempting to demonstrate that the witness had an interest in the case or was biased. The question was proper for that purpose. State v. Bowen, 292 So.2d 197 (La.1974); State v. Chambers, 263 La. 1080, 270 So.2d 514 (1972). These assignments lack merit.
Assignment of Error No. 12
In this assignment of error the defendant objects to the refusal of the trial judge to grant a mistrial based on his contention that certain evidence was not given to the defendant upon request of counsel. Owens' co-defendant, Bobby Ray Young, had called Melvin DuBois as a witness. On direct examination it was revealed that Mr. DuBois had given a statement to the prosecutor concerning the night of the shooting. DuBois had arrived at the Harlem House Restaurant with the defendant Owens. In his statement DuBois said that he did go to the Harlem House on the night in question but said that he did not know anything about a shooting there nor did he hear any shots fired. Defendant Owens contends that this statement should have been given to him by the prosecutor since it was evidence favorable to the defendant and a better defense could have been prepared had he known of the statement.
Defendant contends that he had requested that any such exculpatory evidence be revealed to him. In fact the minutes of the trial reveal that counsel for defendant Young made such a request but the minutes are silent as to whether defendant Owens joined in the request. No written request by defendant Owens appears. However, even in the absence of any motion being filed by Owens pursuant to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the failure on the part of a *651 prosecutor to turn over exculpatory statements may be grounds for a mistrial. In United States v. Agurs, ___ U.S. ___, 96, S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court formulated the tests to be applied in such circumstances:
"[I]f the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, that duty should equally arise even if no request is made."
The court indicated that the crucial consideration is the nature of the evidence and not the culpability of the prosecutor. Evidence not so clearly supportive of innocence must be examined to determine if that omitted evidence creates a reasonable doubt that would not otherwise exist. If so, then error has been committed in failing to disclose such evidence even in the absence of a request. Finally, if there is only the "mere possibility that an item of undisclosed information. . . . might have affected the outcome of the trial," then reversal is not required for nondisclosure. United States v. Agurs, supra.
Here, the evidence was not so clearly supportive of innocence as to require disclosure. Nor do we believe that the failure to disclose this statement could create any reasonable doubt that did not already exist. This is particularly true in light of the fact that Owens himself took the stand and testified that he did hear gunshots at the Harlem House on the night of the shooting. Therefore, according to the standards established in United States v. Agurs, supra, the failure to disclose the existence of this statement does not constitute reversible error.
Defendant Young
Defendant Young has specifically waived Assignments of Error Nos. 6, 7 and 8
Assignment of Error No. 1
In this assignment the defendant contends that the trial court erred in failing to grant a mistrial due to the prosecutor's introduction of evidence of extraneous offenses. During the trial, testimony was elicited concerning an aggravated assault on Amos Harris, an attempted murder of Ernest Jones and the fathering of two illegitimate children of Thelma Smith.
Amos Harris was in the Harlem House Restaurant on the night of the shooting and had walked outside to make a phone call while defendant Young was still outside of the restaurant. As Harris want to make the call, Young put a gun into his stomach. After following Harris across the street, Young returned to the restaurant door and began shooting. Defendant Young began his firing into the restaurant immediately after having committed the aggravated assault on Harris. It seems clear that this assault on Harris was a part of the res gestae and as such was admissible. R.S. 15:447, 448. Similarly, the testimony concerning the shooting of Ernest Jones was admissible as that shooting was a part of the res gestae. Jones was shot at the same time as the victim Sloan in the Harlem House. See Owens Assignment of Error No. 6.
Thelma Smith was called as a witness for defendant Young. On cross-examination she was asked if she had two children by Young. The prosecutor was attempting to demonstrate bias or interest on the part of the witness which is permissible under R.S. 15:492. In addition, it must be noted that R.S. 14:79.2, making it a criminal act for both the father and the mother to conceive and give birth to two or more illegitimate children, was repealed by Act No. 638, § 3 of the 1975 Regular Session of the Legislature. The effective date of that act was September 12, 1975 and the testimony was elicited on September 16, 1975. The fathering of two illegitimate children was not a criminal act when the testimony was given. This assignment lacks merit.
Assignment of Error No. 2
In this assignment the defendant contends that the trial court erred in failing to grant a mistrial based on the prosecutor's alleged improper examination of witnesses, repetitious questions, actions and sarcastic *652 remarks. Defendant indicates no way in which he was prejudiced by any of these actions or remarks. Since no prejudice was demonstrated and the record does not indicate that the defendant was denied a fair trial, the refusal to grant a mistrial was proper. C.Cr.P. 775, 921. See Owens Assignment of Error No. 3. This assignment lacks merit.
Assignment of Error No. 3
The defendant contends that the trial court erred in failing to grant a mistrial based on the State's failure to disclose evidence in its possession favorable to the defendant. (See Owens Assignment of Error No. 12). Defendant Young did file a general Brady disclosure request. The allegedly exculpatory material in the State's possession included the following: (1) knowledge that the .22 pistol used by the defendant during the shooting had not been test fired, nor were shells found at the scene of the crime, nor was the gun connected to the defendant by any evidence; (2) the fact that two of the State's witnesses had criminal records; (3) the existence of the statement given by Mr. DuBois to the prosecutor.
Information on the test firing of the gun and the absence of shells is simply not "exculpatory evidence" required to be disclosed under Brady v. Maryland, supra. The question of linking the defendant to the gun is a matter of weight to be given the evidence and is unrelated to this disclosure issue. (See Owens Assignments of Error Nos. 4 and 7).
The criminal records that the defendant appears to refer to are those of Emanuel Triggs and Lucius Boyd. Triggs had testified at the preliminary hearing at which time he admitted having been convicted of burglary and receiving stolen goods. The defendant did not file his Brady motion until after the preliminary hearing. Therefore, defense counsel already knew of the witness' criminal record. The record of Mr. Boyd, consisted of pleading guilty to a speeding violation and a gambling violation. While this evidence may properly have been used to impeach this witness' credibility, it certainly was not clearly supportive of a claim of innocence nor would it create a reasonable doubt that does not otherwise exist. At most, this information may have helped the defense. United States v. Agurs, supra. Clearly, it was not of "sufficient significance to result in the denial of the defendant's right to a fair trial." United States v. Agurs, supra.
Mr. DuBois' statement was to the effect that he had no knowledge of any crime nor of any shots being fired. (See Owens Assignment of Error No. 3). However, contrary to defendant Young's assertion, that statement did not contain any language indicating that defendant Young was not present at the time of the commission of the offense. In addition, the record reveals that counsel for Mr. Young did have DuBois' statement in his possession at the time of trial, because he handed the statement to DuBois on the witness stand for the witness to read. This assignment lacks merit.
Assignments of Error Nos. 4 and 5
In these assignments the defendant contends that the trial court erred in permitting the introduction into evidence of the pistol allegedly used by the defendant in the shooting on the ground that the gun was secured as a result of an unlawful search and seizure. In addition, he objects that no sufficient chain of custody of the pistol was established and that the gun was not demonstrated to be connected with the defendant.
Lt. Lee Johnson of the Caddo Parish Sheriff's Office testified that on the night of April 6, 1975, while patrolling in an unmarked car, he observed a 1962 white Chevrolet at David Raines Road and Victor Street with a number of people standing outside the car. After passing the vehicle, the sheriff's office radioed a patrol unit to go to that intersection as some shooting was going on there. Lt. Johnson was subsequently informed that one of the men in the white Chevrolet, about which the shooting had just been reported, was Bobby Ray *653 Young. (Two warrants for the arrest of defendant Young were outstanding related to the shooting at the Harlem House Restaurant). Lt. Johnson arrived at the intersection within approximately three minutes, discovered two deputies already on the scene, and all four occupants of the Chevrolet out of the car. All four had been placed under arrest by the deputies and two of the occupants were handcuffed. Lt. Johnson then conducted a search of the vehicle which lasted approximately three and one-half minutes and discovered two pistols underneath the back seat of the vehicle. The defendant did not demonstrate, nor does the record reveal, that Lt. Johnson lacked probable cause to search the vehicle in connection with the reported shooting at the intersection. A shooting had been reported at that location; a warrant for the arrest of one occupant for a shooting was outstanding. State v. Thomas, 310 So.2d 517 (La. 1975). Finally, Lt. Johnson identified the pistol in court as the one that he found in the white Chevrolet. The connection of the gun with the defendant is a matter to be left to the jury. State v. Thomas, 325 So.2d 593 (La.1976). The objection to the introduction of the pistol into evidence was properly overruled by the trial judge. These assignments are without merit.
Assignment of Error No. 9
This assignment is identical to defendant Owens' Assignment of Error No. 2 and is without merit.
Assignment of Error No. 10
Defendant contends that the trial court erred in failing to direct a verdict of acquittal at the close of the State's case.[2] Defendant argues that the State had failed to demonstrate that the defendant had any specific intent to kill either Mr. Triggs or Mr. Sloan. R.S. 14:30.1 provides that specific intent to kill or inflict great bodily harm is necessary for a second degree murder conviction.[3] However, intent need not be proved as a fact but may be inferred from the circumstances of the transaction. C.Cr.P. 445. In addition, a directed verdict is not proper unless there is an absence of evidence of guilt or of an essential element of the offense charged. State v. Jones, 315 So.2d 650 (La.1975); State v. Hamilton, 312 So.2d 656 (La.1975). The victim Sloan testified that he saw Young enter, tell Triggs "I come to get you," and fire a gun at the instant Sloan was shot. There was adequate evidence of intent. The trial judge properly denied the motion for a directed verdict.
Assignment of Error No. 11
In this assignment the defendant contends that the trial court erred in failing to grant a mistrial on the basis of remarks made by the prosecutor in his closing argument. The defendant alleges that the prosecutor appealed to the passions of the jury, made prejudicial characterizations, engaged in personifications and vouched for the credibility of the State's witnesses.
A review of the record reveals that the prosecutor's argument was within the bounds prescribed by C.Cr.P. 774. In addition, this court has often held that before a verdict will be overturned on the basis of improper argument, "this Court must be thoroughly convinced that the jury was influenced by the remarks, and that they contributed to the verdict." State v. Chaffin, 324 So.2d 369, 373 (La.1975); State v. Dennis, 250 La. 125, 194 So.2d 720 (1967). As the defendant has demonstrated no prejudice as a result of these statements, we will not disturb the trial court's ruling.
*654 State v. Daniels, 262 La. 475, 263 So.2d 859 (1972); State v. Dennis, supra.
Assignment of Error No. 12
In this last assignment of error the defendant contends that for all of the reasons stated in his assignments of error he was denied a fair trial and was therefore entitled to a new trial. As no error of law is evident in the trial court's rulings and no injustice has been done the defendant, this court will not reverse the trial court's refusal to grant a new trial. C.Cr.P. 851, 858.
Accordingly, the convictions and sentences of defendants are affirmed.
SUMMERS, J., concurs in the result.
NOTES
[1] According to Mr. Cooper's testimony, Mr. Herd holds Bachelor and Master of Science Degrees in chemistry and prior to opening this crime lab he worked for the State Police Crime Laboratory at Baton Rouge for eighteen years.
[2] The legislature amended Article 778 of the Code of Criminal Procedure removing from the trial judge the authority to direct a verdict of acquittal in jury cases. La. Acts 1975, No. 527, § 1. However, the effective date of the amendment was September 12, 1975 and trial was begun in this case on September 8, 1975. Therefore this assignment of error will be treated on its merits.
[3] If the defendant is engaged in the perpetration of certain enumerated offenses, no specific intent need be established. R.S. 14:30.1. However, there is no allegation that the defendant was engaged in the perpetration of any of these offenses.