353 So.2d 275 (1977)
STATE of Louisiana
v.
Lloyd DAVIS.
No. 60229.
Supreme Court of Louisiana.
December 19, 1977.
*276 James M. Buck, Algiers, Kramer & Davis, Alexandria, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., Charles J. Yeager, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Defendant Lloyd Davis was charged with the August 16, 1976 aggravated battery upon Milton Dauzat with a knife. La.Rev. Stat. 14:34. In a trial by jury he was found guilty and sentenced to imprisonment at hard labor for five years. Four assignments of error are urged on this appeal.

Assignments 1 and 2
These assignments are considered together because they are interrelated presenting in substance one issue. It is contended that there was no evidence upon which the jury could reach the conclusion that defendant was the aggressor, and, therefore, the State failed to sustain its burden of establishing that the defendant did not inflict injury on the defendant in self-defense. A statement of the facts will resolve both issues.
At one o'clock on the afternoon of August 16, 1976 defendant Lloyd Davis and Gladden Dupree repaired to the Happy Hollow Bar in Alexandria. While they were drinking beer and shooting pool, a party of "roofers" came into the establishment. This group, included the victim Milton Dauzat, Kenneth Desoto, Girard Williams, Grant Williams and Florien Dauzat. They worked together as roofers and were related by blood or marriage. Gladden Dupree, Davis' friend, and Dauzat, the victim, placed a bet on the outcome of a pool game. When Dauzat won the bet an argument ensued. Angry words were exchanged between the two groups and there was some testimony that some of those involved brandished knives at this time.
E. C. Wiley, proprietor of the bar, then intervened and halted the argument between the parties. Whereupon the "roofers", Dauzat and his friends, left the bar. Davis and his friends then proceeded to follow Dauzat who was then outside. Wiley tried to stop Davis but he was pushed aside. As Davis headed outside he was seen by Sam Brunson, a patron, with an open pocket knife in his hand.
Wiley and Brunson followed a few minutes later. As they reached the parking lot, a state of total confusion reigned there. Men were fighting all over the lot. Brunson testified that the roofers were armed with shovels, while Davis and Dupree were armed with knives.
What occurred at this time is not without doubt. Apparently the defense sought to show that the roofers had retreated to their trucks, armed themselves with shovels and then returned to encounter Davis and his friends as they came from the barroom. On the other hand, the prosecution sought to establish that the roofers armed themselves with shovels in an effort to defend against Davis and Dupree who were threatening them with knives.
As a result Davis did cut Dauzat with his knife, contending however that Dauzat swung at him with a shovel, and when he did Davis stabbed him.
*277 Shortly thereafter the roofers climbed in their trucks and left. As they left Brunson said he heard Davis say, "Theywell one of them won't get far . . . I stuck a knife in him and pulled it through." The police then arrived on the scene and arrested Davis and Dupree. Dauzat was transported to the hospital.
From these facts the jury could conclude that Davis was the aggressor as he pursued Dauzat with a knife as the "roofers" departed the barroom. With this finding, the claim of self-defense fails and these assignments of error are without merit.
This Court's review of a criminal conviction on appeal is limited to questions of law. If there is some evidence upon which the jury could decide the elements of the crime, this court will not inquire into the sufficiency of the evidence.

Assignment 3
In his rebuttal the prosecutor argued:
"Now, if you believeif you believe that Lloyd Davis left that bar with a knife in his hand looking for trouble, and went out and found it, then it's your duty to convict. It's just that simple. If you believe he left the bar with a knife in his hand, then you must conclude that he was the aggressor."
Defense counsel objected that the argument was improper and not supported by the law, and it was necessary to prove much more to warrant a conviction. At this point the trial judge admonished the jury that anything counsel said was argument and that he, the judge, would ultimately charge the jury on the law.
Later in his charge, the trial judge said:
"A person who is an aggressor or brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict."
According to the defense this instruction following the prosecution's rebuttal argument left the jury in a quandary as to what is meant by an aggressor withdrawing from the conflict. There is no validity to this argument. The instruction is clear and unequivocal and there is nothing in the charge or the record to support the claim that the jury was left in a quandary by virtue of the rebuttal argument of the prosecutor and the judge's instructions which followed.

Assignment 4
The defense maintains that the prosecutor strode back and forth before the jury with Davis' knife in his hand thrusting the knife at the jury for emphasis. His closing remarks were punctuated by "stabbing" the knife into a table immediately in front of the jury.
No objection was made by defense counsel to this alleged conduct until the jury retired. Although he stated that his view of the table and of the prosecutor was obstructed to some extent during that portion of the argument, the trial judge did say that he heard some noise at the table about that time.
With a word of caution to prosecutors against excessive histrionics, the following explanation of the prosecutor is considered acceptable:
"UhI didn't stab it into the table. Holding the end of the knife in my hand with my thumb, my forefinger and my second index finger, I dropped the knife onto the table and I would say that it entered the tableit would be hard to estimate, about a sixteenth of an inch. Barely made an indentation into the table. I wouldn't describe that as a stabbing."
La.Code Crim.Pro. art. 774; State v. Brumfield, 329 So.2d 181 (La.1976); State v. Chaffin, 324 So.2d 369, cert. denied, 426 U.S. 907, 96 S.Ct. 2228, 48 L.Ed.2d 832. Before a verdict approved by the judge is set aside on the ground of improper argument, this Court must be thoroughly convinced that the jury was influenced by the remarks, and that the remarks contributed to the verdict.
For the reasons assigned, the conviction and sentence are affirmed.