356 So.2d 415 (1978)
STATE of Louisiana, Appellee,
v.
Floyd FALKINS, Appellant.
No. 60628.
Supreme Court of Louisiana.
March 6, 1978.
Rehearing Denied April 6, 1978.
*416 Paul L. Billingsley, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William L. Brockman, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant Falkins was convicted of armed robbery, La.R.S. 14:64, and sentenced to imprisonment at hard labor for thirty years.
His appeal presents five assignments of error. Of these, Assignments 1 and 2 raise a substantial issue of reversible error. They concern the failure of the state's prosecutrix to reveal, upon request, information of an exculpatory naturethat two of the state's eyewitnesses had, on the day of the robbery, made mistaken identifications of a person as the robber who was not actually involved in or present at it.
Factual Context
Three men robbed a teller at a bank in December, 1975. Falkins was arrested some five months later, primarily based upon the claim of one of the admitted robbers that Falkins was a co-participant. (At the trial, Falkins testified, claiming innocence; he ascribed the robber's identification of him as arising from a grudge in connection with a narcotics disagreement between them.)
Falkins' conviction is based solely upon eyewitness identification made, after his arrest, by bank employees and a customer present during the robbery. Neither the weapon or costumes used in the robbery, nor any of its proceeds, were discovered or connected with him. The bank was equipped with cameras, but the film did not include any image of the accused during the robbery. Tr. 64.
Specific Pre-Trial Request as to Identification Evidence
Assignments 1 and 2 relate to the denial of a new trial, despite a showing that exculpatory identification evidence had been withheld from the defense, and that the defendant had made specific pre-trial inquiry of the prosecutor as to the existence of such subject-matter information.
On the motion for new trial, after appointment of new counsel, an evidentiary hearing developed the following facts:
On the day of the bank robbery, the FBI arrested several suspects and brought them to the bank. Two of the eyewitnesses to the robbery positively identified one Durosseau as one of the robbers. It is conceded that their initial identification was mistaken.
The United States Attorney's office made this information available to the state assistant district attorney in charge of the prosecution. Although this prosecutrix' recollection was unclear, the positive testimony of the federal attorney, together with her own admissions, make it virtually indisputable that she was specifically informed that two eyewitnesses had made a mistaken identification of a robber on the day of the robbery.
In the state prosecution, prior to trial, the appointed defense attorney requested of the prosecutrix information as to whether any individuals were identified by the bank personnel subsequent to the robbery. Upon receiving information from the prosecutrix that no such identifications were made, the defense attorney did not file a Brady motion *417 requesting revelation of exculpatory information.
Again, the recollection of the prosecutrix is unclear as to this incident. However, she further testified that, if formally ordered to reveal exculpatory information at the time, she would not have felt obliged to reveal this initial misidentification. Her reason was that the misidentification of one of the three robbers is not necessarily exculpatory of the accused himself.
For the present purposes, we will accept the record as preponderantly showing that, despite a specific request of the defense attorney as to the existence of such identification evidence, the prosecutrix did not reveal that two of the state's eyewitnesses had earlier misidentified one of the robbers.
The trial court itself apparently so concluded, in resting its denial of the new trial upon the reason that the defendant had not, by formal Brady motion instead of informal request, asked for this exculpatory evidence.
Undoubtedly, a formal motion might preserve the request better than the recollections of the attorneys at a subsequent time. Nevertheless, considering the affirmative duty of the prosecutor to disclose exculpatory evidence in some instances even without request,[1] we do not believe that the constitutional right to obtain exculpatory information of a specified nature upon specific request, United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), State v. May, 339 So.2d 764 (La.1976), is waived by lawyer-to-lawyer request, which relies for disclosure upon the traditional professional responsibility and honorable candor of the legal profession, instead of by making a formal motion to the court for it.
Legal Principles Applicable
Unquestionably, upon specific request concerning the existence of exculpatory identification testimony, the prosecutrix was in error in failing to disclose it, especially since the state's whole case depended on eyewitness identification. State v. May, 339 So.2d 764 (La.1976).
As we there stated, 339 So.2d at 770, quoting from Agurs at 96 S.Ct. 2399: "` * * * Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.'"
Upon formal request, the trial court should and presumably would have ordered the state to furnish information of the misidentification immediately following the robbery.
The issue before us, however, is not only whether the state upon request should have disclosed the misidentification testimony (it should have); but, in addition, whether the state's failure to disclose it is error requiring reversal.
As to the latter issue, reversibility is essentially determined by whether the "nondisclosure deprived the defendant of his right to due process . . . [i. e.] of a fair trial," Agurs, 96 S.Ct. 2399. Whether the evidence withheld is so constitutionally material as to require reversal is determined by an "inevitably imprecise standard" *418 in the light of the "entire record." Id.[2]
In Agurs, the United States Supreme Court summarized the constitutional test of reversibility because of nondisclosure in these terms, 96 S.Ct. 2401-02:
"The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that [in a post-trial hearing by the court] if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is not justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt."
Reversible Error Shown
Examining the record as a whole, we find that the initial misidentification of the robber by two state eyewitnesses was so material that its nondisclosure, especially upon request, deprived the defendant of a fair trial.
As earlier stated, the sole basis of the state's conviction is the eyewitness identification of the accused as one of the three robbers. These five eyewitnesses had never seen the accused before, had mostly glimpsed but briefly the robber they identified as the accused in the episode of five minutes or so, and did not have the opportunity to view the defendant himself until some five months after the robbery.
Were the identifications strong and positive, nondisclosure may not have required reversal. Here, however, as a summary of the facts will show, failure to disclose to the accused the earlier misidentification by two of the state's eyewitnesses, for purposes of cross-examination as to the credibility of their trial identification testimony, had the effect of omitting evidence which "in the context of the entire record create(s) a reasonable doubt as to the defendant's guilt." State v. May, cited above, at 339 So.2d 771.
The robbery occurred as follows:
Three black men entered the bank. One of them stood at the door, maintaining a lookout and holding a gun on bank employees made to lie on the floor. One jumped over the teller's bench and forced a teller to give her some cash and to search for more, striking her with a gun in the process. The third (identified as the accused by three of the witnesses) stood with a bag in the center of the room.
This third robber was dressed in woman's clothes, with a wig. He was not masked, as were the other two robbers. His face alone was seen by the witnesses.
On the day of the robbery, FBI agents brought one Durosseau to the bank as a suspect. Two of the state's five eyewitnesses positively identified Durosseau as the robber. These two witnesses were the security guard (Williams) and a bank customer (Mrs. Peggy Ralph).
In the context of the record, he was so identified on the basis of the facial similarity of Durosseau to the robber, just as on the same basis (see below) the present defendant was so identified. The failure to disclose this misidentification becomes material in the light of the evidence as a whole.
The testimony of the five eyewitnesses may be evaluated as follows:
(1) The bank guard (Williams), alone of the witnesses, identified the accused as the robber who stood guard at the door. (The other witnesses identified him as the man in woman's clothes). He was firm in his identification. Under cross-examination, he *419 testified positively as to his "good memory" of the incident, Tr. 47, and that there was "no doubt in my mind," Tr. 45. (It is to be remembered that on the day of the robbery he had mistakenly identified Durosseau with the same certainty.)
(2) The customer (Mrs. Ralph) was likewise positive that the man without a mask in woman's clothes was the defendant. Tr. 53. However, in her earlier identification on the day of the robbery, she had with equal certitude identified Durosseau as the unmasked robber.
In both of these instances, the earlier positive misidentification was of another person than the defendant, who was now at the trial identified by them as the robber whose face they had previously misidentified as Durosseau's. This strong circumstance indicating possible error in their present trial identification is one which, brought to the jury's attention, might well have raised reasonable doubts as to the accuracy of their identification of the accused.
In addition, however, other circumstances indicate the weakness of the identification testimony as a whole. It is in this context that the earlier misidentification becomes so material that its nondisclosure amounts to reversible error:
(3) The cashier (Ms. Lebeaud) was struck by and largely preoccupied with another of the robbers. She recognized the accused at the lineup some months later by "the features in the face," including his "high cheek bones." However, she also testified that, immediately following the robbery, she had described the woman-clothed man (whom she now identified as the accused) as being between 5' 4" and 5' 7" in height; whereas, in fact, the woman-clothed man was "the tallest one," Tr. 46, stated in brief to be six feet tall.[3]
(4) The bank manager (Nogess) had identified the accused as a robber "by facial structure" at the lineup held four months or so after the robbery. At the trial, he identified the accused as the man he had identified at the lineup, but he admitted he wasn't "sure" the defendant was the man and that he did not get "that good a look at any one of the individuals." Tr. 40.
(5) The last of the five witnesses, the receptionist (Mrs. Venturells), did positively identify the accused as the unmasked robber in woman's clothes.
In summary, however, the record discloses weaknesses and uncertainties in the identifications made by two of the state's five witnesses. Thus, the misidentification by two others on the day of the robbery, if brought to the attention of the trial jury, was sufficiently material as to have raised reasonable doubt in the jury's mind, both as to the witness' own positive trial identification and also as to the strength of the state's case (i. e., since the identification of the accused by four out of five of the state's eyewitnesses is shown to be open to doubt).
Upon this showing, the constitutional test for reversibility has been met; for, as Agurs states, "the omitted evidence creates a reasonable doubt that did not otherwise exist." 96 S.Ct. 2401.
We are thus unable to agree with the persuasive and forceful arguments presented by the state's appellate brief that the nondisclosure is not reversible, because it concerned only matters marginally useful for purposes of impeachment. See, e. g., State v. Owen, 338 So.2d 645 (La.1976) and Garrison v. Maggio, 540 F.2d 1271 (CA 5, 1976), relied upon by the state.

Decree
For the reasons stated, therefore, we find that the defendant was denied a fair trial by the nondisclosure, upon request, of material evidence casting doubt upon his guilt. We reverse the conviction and sentence, and we remand for a new trial.
REVERSED AND REMANDED.
SANDERS, C. J., dissents with written reasons.
*420 SUMMERS, J., dissents.
MARCUS, J., dissents and assigns reasons.
SANDERS, Chief Justice (dissenting).
In the present case, three men robbed a New Orleans bank. On the day of the robbery, the F.B.I. brought several suspects to the bank for possible identification. Two of the five eyewitnesses misidentified one of them as one of the robbers. The Assistant District Attorney made no disclosure of this information to the defense prior to trial. The majority reverses the conviction. I disagree.
As noted by the majority, the controlling decision is United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Under that decision, the test of reversibility is whether or not the undisclosed evidence creates a "reasonable doubt that did not otherwise exist." If there is only the "mere possibility" that the undisclosed information might have produced a contrary verdict, reversal is not required. State v. Owens, La., 338 So.2d 645 (1976).
In my opinion, the misidentification of one of the three participants on the day of the robbery is insufficient in the light of the entire record to raise a reasonable doubt as to this defendant that did not otherwise exist. See State ex rel. Clark v. Marullo, La., 352 So.2d 223 (1977); State v. Cass, La., 356 So.2d 936 (1977); State v. Williams, La., 349 So.2d 286 (1977).
For the reasons assigned, I respectfully dissent.
MARCUS, Justice (dissenting).
I do not consider that the failure to disclose the initial misidentification of one of the three robbers by two of the five eyewitnesses, for purposes of cross-examination, was so material that it deprived defendant of a fair trial. Evaluated in the context of the entire record, I do not believe that the omitted evidence creates a reasonable doubt that did not otherwise exist. Hence, no constitutional error was committed. I find no justification for reversal of the conviction and sentence and remand for a new trial. Accordingly, I respectfully dissent.
NOTES
[1] The prosecution is obliged to make available to the accused's counsel evidence that it has obtained which is clearly supportive of the accused's innocence, even in the absence of any defense request for it. United States v. Agurs, cited in text below, at 96 S.Ct. 2399. As will be seen, as developed at the trial, the two eyewitnesses had affirmatively identified as another person the robber they now identified as the defendant. At the time of non-disclosure, however, the state (not having the benefit of the full trial testimony) did not so realize. The non-disclosure in this instance indicates the wisdom of liberal rather than guarded disclosure, in order to avoid post-conviction reversal for non-disclosure of what turns out to be truly exculpatory.
[2] Agurs, 96 S.Ct. 2399: "Because we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure."
[3] The record indicates that one of the other robbers was 5' 11" in height. Tr. 46.