357 So.2d 526 (1978)
STATE of Louisiana
v.
Kelly CRUMHOLT.
No. 60853.
Supreme Court of Louisiana.
April 10, 1978.
*527 Lewis O. Unglesby, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Lennie F. Perez, Marilyn C. Castle, Asst. Dist. Attys., for plaintiff-appellee.
CALOGERO, Justice.
Kelly Crumholt was indicted by the Grand Jury for the Parish of East Baton Rouge for the second degree murder and armed robbery of Mac Crumholt. (R.S. 14:30.1 and R.S. 14:64, respectively). Following a trial by jury defendant was found *528 guilty of manslaughter and simple robbery. Defendant was sentenced to serve ten (10) years at hard labor for the manslaughter conviction and three (3) years at hard labor for the robbery conviction, the sentences to run concurrently. On appeal defendant relies on four assignments of error, having abandoned four other assignments filed in the trial court.

ASSIGNMENT OF ERROR NO. 1
In this assignment defendant contends that the trial court erred in allowing the prosecution to cross-examine defendant concerning other crimes and criminal activity of defendant allegedly unrelated to the crimes for which defendant was being tried. Defendant alleges that the trial court erred in overruling his objection to this testimony and in denying his request for a mistrial.
During direct examination defendant admitted shooting Mac Crumholt, his uncle, but alleged that he did so only in self defense. He testified that just prior to the shooting he and the victim had argued over some money allegedly owed to him and over a gun which he had borrowed from the victim but had not yet returned. Defendant further testified that during this argument Mac Crumholt attempted to strike him but failed, and stated "I'll take care of you." The victim then allegedly turned toward a nearby table and was reaching for something (possibly a knife) when defendant shot him with a shotgun. Defendant also testified during direct examination that he had experienced several unfriendly incidents with Mac Crumholt and had even been chased by his uncle on one occasion with a knife. To further support his contention that the victim, and not he, was the aggressor in the conflict which resulted in the uncle's death, defendant had introduced several witnesses who testified to the victim's violent tendencies and previous threats against defendant and other family members. One such witness specifically testified in response to a question by defense counsel that certain earlier incidents involving defendant and the victim had not been provoked by defendant.
In an attempt to refute the testimony offered by these witnesses and by defendant himself, the state attempted to show (through cross-examination of defendant) that the previous threats of violence by the victim toward defendant were all provoked by defendant. Defendants objected to these questions when it was disclosed that the alleged acts by defendant which had arguably provoked the victim constituted criminal activity. The trial judge overruled defendant's objection, denied his motion for a mistrial and allowed the defendant to be cross-examined concerning the prior acts. Thereafter, defendant admitted committing several of the acts which provoked the victim but arguably denied at least one. The state made no attempt to prove that the alleged offenses had been committed other than through the testimony of defendant himself.[1]
Defendant argued that the state's questioning him concerning alleged criminal acts should have been precluded because irrelevant to the crime for which he was being tried, and because the questions were designed simply to depict defendant as possessing a criminal disposition. The state argued that they are permitted wide latitude on cross examination and that the queries were properly designed to elicit admissions which would tend to rebut defendant's claim of self defense.
The trial judge ruled that while he would not allow questions concerning, or proof relative to, unrelated criminal activity on defendant's part, he would permit these questions in light of defendant's own extensive exploration of the victim's propensity for violence and prior threats upon defendant *529 and the matter of these earlier incidents not being provoked by the defendant.
Generally evidence of criminal activity by a defendant which is unrelated to the crime for which he is being tried is excluded at trial because of the tendency of such evidence to lead a jury to convict an accused of one crime merely because of his participation in others. Exceptions to this general rule, however, have been established through statutes and jurisprudence. In State v. Sutfield, 354 So.2d 1334 (La. 1978) (Docket No. 60520) this Court briefly listed many of the major exceptions to the exclusionary rule as follows:
Aside from related offenses admissible as part of the res gestae, and convictions admissible for impeachment purposes, Louisiana's statutes provide for only three "other purposes" for which evidence of other criminal acts may be offered  evidence of acts relevant to show intent, knowledge or system. State v. Prieur, 277 So.2d 126 (La.1973); See La. R.S. 15:445, 446. In accord with general authority, See, McCormick § 190, Louisiana courts also have admitted such evidence for purposes other than those listed in the statutes, e. g., identity, State v. Moore, 278 So.2d 781 (La.1973); motive, State v. Dowdy, 217 La. 773, 47 So.2d 496 (1950); evidence of criminal acts of the accused, constituting admissions by conduct, intended to obstruct justice or avoid punishment for the present crime, State v. Burnette and Granger, 353 So.2d 989 (La.1978) (Docket No. 60,053). See, Comment, Other Crimes Evidence in Louisiana  To Show Knowledge, Intent, System, etc. in the Case in Chief, 33 La.L. Rev. 614 (1973).
In the present case we find that the circumstances surrounding defendant's cross-examination justified the inquisition into defendant's purported criminal activity.
Several factors lead us to rule as we do in this case. Initially we note the special relevance of the evidence. To support his claim of self-defense defendant first introduced the testimony of several witnesses, and then testified himself, to establish the aggressive character of the victim and the absence of provocation on the part of defendant in the earlier conflicts. In response the state attempted to rebut this evidence by showing that the victim's threats and violence on prior occasions had indeed been provoked by defendant. Thus, as rebuttal the evidence of defendant's criminal conduct was highly relevant to establish who was the aggressor in the fatal conflict and whether defendant reasonably apprehended danger of death or great bodily injury at the hands of an ostensibly unprovoked victim. The interrogation was not designed to prove defendant guilty by showing that he was a bad man who had committed crimes in the past.
Secondly we note that the probative value of the evidence clearly outweighed any prejudicial effect it may have had. State v. Sutfield, 354 So.2d 1334 (La.1978) (Docket No. 60520). A review of the record indicates that the focus on defendant's prior conduct was not to establish criminal wrongdoing but rather to prove provocation. The evidence was presented in such a manner that it gave the impression of anti-social inter-family conflict rather than criminal activity.[2]
In view of all of these circumstances we do not feel that the state's arguable failure to prove clearly and convincingly one of the provoking incidents (theft of a color television set) is of any real consequence. Had the state questioned defendant relative to defendant's having provoked the victim on a specific previous occasion by punching him, we would surely not find reversible error because of a reference to the criminal act of battery. So too the law is not offended here by allowing the state to ask if provocation had been supplied by defendant's *530 taking the victim's television set, particularly since defendant himself had presented evidence that he had not provoked the earlier conflicts.
Accordingly we conclude that the trial judge was correct in allowing cross-examination of the defendant concerning purportedly criminal provocative acts in connection with the earlier conflicts between defendant and the victim. The assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2
In this assignment defendant alleges that the trial court erred in allowing cross-examination of defendant as to other offenses despite the state's failure to comply with the notice requirements of State v. Prieur, 277 So.2d 126 (La.1973). Defendant admits that he mistakenly labeled this assignment in the trial court as a failure to provide the notice required by La.C.Cr.Pr. art. 768 (dealing with notice of the state's intention to introduce confessions or inculpatory statements) but requests this Court to interpret his assignment as a complaint against the state's failure to provide the notice required by Prieur. Under proper circumstances this Court would certainly construe a defendant's assignment in accordance with its true intent disregarding the label employed. However, we need not address this issue in the present case for here defendant objected to the propriety of the cross-examination only on the basis of its irrelevance, prejudice, and inadmissibility without objecting that notice of the State's intent to make such inquiry had not been provided. Hence, under C.Cr.P. 841 the question is not properly before this Court for review.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 5
At the close of defendant's trial defendant submitted several special charges to the trial court to be given to the jury. The trial court refused to give the suggested charges. Defendant contends that the trial court erred in refusing to do so. We find no merit in this contention.
A requested charge must be given by the trial court if it does not require qualification, limitation or explanation, and if it is wholly correct and pertinent. However, the charge need not be given if it is included in the general charge or in another special charge that is to be given. C.Cr.P. 807.
Defendant's requested special charges were adequately covered in the trial judge's general jury charge. Defendant's charge emphasized that only defendant's reasonable belief of danger was necessary to justify the killing and that it was not necessary that there have been actual danger. The judge's charge, in essence, included the substance of defendant's requested charge when it stated that justifiable homicide in self defense is by one who "reasonably believes" that he is in imminent danger. That language intimates that the belief of danger is essential rather than the existence of actual danger.
This assignment has no merit.

ASSIGNMENT OF ERROR NO. 6
In his final assignment defendant contends that the trial court erred in refusing to sustain his objections to several alleged prejudicial statements made by the prosecutor in closing and rebuttal arguments. We have reviewed each of the allegedly prejudicial comments by the state and do not find that they are of the character which would warrant a reversal of defendant's conviction. As this Court has consistently held, a verdict will not be overturned on the basis of improper argument unless the Court is thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. See, State v. Davis, 353 So.2d 275 (La.1977); State v. Owens, 338 So.2d 645 (La.1976); State v. Chaffin, 324 So.2d 369 (La.1975); State v. Dennis, 250 La. 125, 194 So.2d 720 (1967).
*531 This assignment is without merit.
For the above reasons we hereby affirm defendant's conviction and sentence.

Decree
AFFIRMED.
NOTES
[1] During his testimony defendant admitted committing such acts as cutting the wires to his uncle's stereo and selling a black and white television set which belonged to his grandparents. Defendant's testimony concerning the alleged burglary of his uncle's house and theft of a color television is unclear, however. Defendant originally denied any participation in the incident. Subsequent testimony by defendant, however, could arguably be interpreted as an admission of these improprieties, also.
[2] We characterize the actions as such due to the nature of the relationship between defendant and victim. The record discloses that victim and defendant had lived together on several previous occasions in the house which belonged to defendant's grandparents, who were also the victim's parents. In fact, it appears that the victim invited defendant to reside with him in the house just prior to the killing.