Larry Randall LEE, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. KCD 29804.

Missouri Court of Appeals,
Kansas City District.

Oct. 30, 1978.

David M. Strauss, Public Defender, Columbia, Marjorie Wholey Haines and Steve Bouchard (Certified Law Interns under Rule 13), for movant-appellant.

John D. Ashcroft, Atty. Gen., Gregory W. Schroeder, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Larry Randall Lee pleaded guilty on November 13, 1972, to assault with intent to kill and was sentenced to 15 years imprisonment. On January 18, 1974, he filed a motion to vacate the sentence under Rule 27.26. That motion was denied, from which he pursues this appeal.

The assault in question occurred in Columbia, Missouri, on April 4, 1972. A col-

lege student, Vickie Ranson, was stopped by two black males who took her purse and shot her in the face. Both escaped. Vickie's father then hired David L. Bear III, a private lawyer practicing in Columbia, to assist with the police investigation and prosecution.

As part of the police investigation, Officer Muse showed Vickie a group of mug shots from which she selected the photographs of Lawson and Hickem as her assailants. A line-up was then held on April 14, 1972, at the request of Bear, in which Lawson and Hickem were included as subjects. From this line-up, Vickie made identification of who had assaulted her. There is much contradiction in the testimony given at the 27.26 hearing as to just whom she identified. According to one version, she picked out Lawson and Hickem. According to another version, she picked out Lawson and a subject named Taylor. The greater number of witnesses testified that she picked out Taylor alone. This conflict in testimony might have been resolved by a video tape which was taken of the line-up, but that tape was not available by the time of the 27.26 hearing, because the police had erased that episode in order to reuse the tape for other purposes.

After the line-up, Bear talked to Lawson and had him released from jail so that he could go out on the street and attempt to find out who had in fact committed the assault. Lawson returned with the information that the robbery and assault had been committed by Lee and Quint. Thereupon, Bear prevailed upon the police to pick up Lee for questioning and a confession was procured from him. For reasons unnecessary to be detailed here, that confession was obtained invalidly and was not usable.

Lee was next taken before the Juvenile Court, and after due hearing jurisdiction was waived in favor of prosecution as an adult. A preliminary hearing was set in the magistrate court at which the only witness to appear was Vickie. Before testifying, she inquired of Bear whether she could see a photograph of Lee and Bear did furnish her Lee's mug shot. Vickie thereupon entered the courtroom and made positive identification of Lee as her assailant.

A conference ensued between the Lee family and defense counsel Marshall, during the course of which Marshall advised the Lees "that in my judgment she was a good witness, she would tell a good story. And at that preliminary hearing, on examination by me, she indicated she could identify the defendant, Larry Randall Lee, because of the strong lighting at the parking lot where she was assaulted. There was no equivocation in her statement, and there was no doubt in my mind she could make the identification on that basis."

At the time of that conference between Marshall and the Lees, Marshall had been informed by the prosecutor that Lee's confession was flawed and the prosecutor promised that no attempt would be made to use the confession. However, no disclosure was made to Marshall by the prosecutor or anyone on his staff with respect to the misidentifications which Vickie had made at the line-up, nor was any information given to Marshall by anyone with respect to Vickie's use of a mug shot immediately before taking the stand at the preliminary hearing. This nondisclosure occurred despite the fact that the prosecutor knew that a false identification had been made at the line-up. The nondisclosure was further in the face of the additional fact that Ms. Timothy Sloan, an assistant prosecutor, had found herself in disagreement with Bear's activities. Sloan knew from being personally present at the line-up that Vickie had made a misidentification and Sloan testified at the 27.26 hearing: "I did feel that the facts of the misidentification should have been communicated to the defense attorney because I do feel very strongly that the defense cannot recommend a plea of guilty or discuss a plea of guilty with a defendant unless they are aware of factors which might mitigate the case against their clients."

The discussion between the Lees and attorney Marshall led to a decision that Lee should plead guilty. A hearing was held in open court with respect to the plea entry

with all of the customary questions from the court bearing upon whether the plea was being entered voluntarily and with adequate understanding and pursuant to advice of counsel. However, even at this late stage, there was still no disclosure by the prosecutor of the misidentifications made by Vickie.

On this appeal, Lee assigns three points of error: 1) that his guilty plea was equivocal and therefore should not have been accepted; 2) that the employment of and action by Bear was improper, contrary to public policy, and prejudicial; and 3) that Lee's plea was not knowingly and intelligently entered, in that the prosecutor did not disclose evidence favorable to Lee as to which the prosecutor had a duty of disclosure. Inasmuch as the third point is meritorious and requires reversal, Lee's first two points need not be discussed nor ruled.

█ By entering into plea bargaining and agreeing to plead guilty, Lee forwent certain important constitutional rights, including that of putting the State to proof of its case beyond a reasonable doubt. Lee, of course, had a right to waive those constitutional rights, but for the waiver to be effective, he had to make the decision knowingly, intelligently and with competent assistance of legal counsel. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). The question for determination here is whether Lee did make a knowing, intelligent choice under circumstances where he was deprived of information to which by law he was entitled.

█ That Lee was improperly deprived of highly relevant information appears quite clear. A duty rests upon a prosecutor to disclose any exculpatory evidence bearing upon the guilt or innocence of the defendant. *Brady v. State of Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). That duty extends to disclosing evidence of an impeaching nature which would tend to cast discredit upon a key prosecution witness. *State v. Falkins,* 356 So.2d 415 (La. 1978), cert. denied —— U.S. ——, 99 S.Ct. 190, 58 L.Ed.2d 175; *People v. Ahmed,* 20 N.Y.2d 958, 286 N.Y.S.2d 850, 233 N.E.2d 854 (1967); *Grant v. Alldredge,* 498 F.2d 376 (2nd Cir. 1974); *Evans v. Janing,* 489 F.2d 470 (8th Cir. 1973); *Simos v. Gray,* 356 F.Supp. 265 (D.C.Wis.1973); *State v. Abernathy,* 525 S.W.2d 414 (Mo.App.1975); *State v. Koonce,* 504 S.W.2d 227 (Mo.App.1973). But see *Garrison v. Maggio,* 540 F.2d 1271 (5th Cir. 1976). Furthermore, the duty of disclosure exists even in the absence of a request on the part of the defendant. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *State v. Abernathy, supra.*

█ Of course the nondisclosure must have been with respect to a material matter and must have resulted in prejudice to defendant's rights before the defendant will be entitled to any postconviction relief. That Vickie's misidentification was a material matter and that the nondisclosure resulted in prejudice to Lee were not even challenged by the State on original submission of this case.[1] Furthermore, that disclosure would have prompted and enabled defense counsel to probe further to discover that Vickie had used Lee's photograph before identifying him at the preliminary

1. In a post-argument letter brief, filed with permission of the court respecting the applicability of *State v. Falkins, supra,* the State argues in passing that Quint's testimony would have been available at Lee's trial and so Vickie's misidentification was not sufficiently material to warrant setting aside the guilty plea. It is to be noted that Quint himself would have been subject to impeachment by reason of his plea bargain. Quint's testimony would have been particularly vulnerable on the question of which of the two, Lee or Quint, fired the gun— and this matter had a strong bearing on the

severity of punishment to be imposed (or that which would be agreed to as a matter of plea bargaining). Note further that in *Falkins,* the pretrial misidentification was made by only two out of a total of five eyewitnesses who testified and identified the defendant at trial. Note still further that Falkins' arrest had been based upon the statement of one of the admitted robbers that Falkins had been a co-participant. Nevertheless, *Falkins* held the nondisclosure of the misidentification there was material and prejudicial.

hearing. In determining materiality of a nondisclosure, account must be taken not only of the precise evidence suppressed but also of such additional evidence to which a skillful counsel would be led by careful investigation. *Grant v. Alldredge, supra.* Materiality of and prejudice from the nondisclosure here can hardly be successfully challenged in view of all of the circumstances of this case which were accurately appraised by Assistant Prosecutor Sloan when she said that "the defense cannot recommend a plea of guilty or discuss a plea of guilty with a defendant unless they are aware of factors which might mitigate the case against their clients."

Although the State does not deny that the prosecution had a duty to disclose and failed in that duty,[2] it does argue strongly and with much plausibility that such breach of duty has become insulated from attack by reason of Lee's entry of his guilty plea. In making this argument, the State relies basically upon the *Brady* trilogy [*Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); and *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970)] and *Tollett v. Henderson, supra.*

The State lays heavy stress on the following portion of the *Tollett* opinion:

"[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)]."

The State further calls attention to the fact that in the *Brady* trilogy there were matters unknown and unknowable to the defendants at the time they pleaded guilty, and in *Tollett* the post-trial motion alleged that the matter relied upon was unknown to both the defendant and his counsel at the time of the plea; but despite those elements, the United States Supreme Court held the pleas to be binding and not subject to being set aside.

■■■ There can be no question but that a guilty plea is effective despite a prior violation of defendant's constitutional rights, provided the defendant and his counsel knew that the violations had occurred and the violations had ceased to have any coercive effect at the time the quality plea was entered. Also, it cannot be questioned that a guilty plea is binding even though the defendant and his counsel were lacking in some information bearing upon the case, so long as that lack of information was not the result of ineffective legal representation. *State v. Nielsen,* 547 S.W.2d 153 (Mo. App.1977). However, no case had been cited or found by independent research which has denied the right to set aside a guilty plea under the following combination of circumstances: 1) exculpatory evidence existed at the time of the guilty plea which reasonably would have led the defendant not to so plead if he had known of that evidence; and 2) the exculpatory evidence in question was known to and suppressed by the prosecutor.[3] We hold that when these

2. The prosecutor testified at the 27.26 hearing that he had received information concerning the misidentification made by Vickie at the line-up. Even if he had not personally received such information, the State would be charged with the knowledge possessed by Assistant Prosecutor Sloan. *State v. Koonce, supra; State v. Allen,* 530 S.W.2d 415 (Mo.App.1975).

3. In the *Brady* trilogy, the defendants sought to gain the benefit of Supreme Court decisions rendered subsequent to their pleas of guilty. The operative facts were known, but what legal rule would be announced by the Supreme Court with respect to those facts was unknown. The *Brady* trilogy in effect holds only that a defendant and his counsel must make their own best estimate on the legal question and they are bound by that appraisal. Note that the prosecutors were guilty of no suppression or withholding of information bearing on that appraisal to be made.

factors conjoin, the defendant should be entitled to withdraw his guilty plea. These factors are present here, and Lee should therefore be permitted to withdraw his guilty plea and replead.

Reversed and Remanded.

All concur.

*Tollett* involved a claim that Negroes had been systematically excluded from service on grand juries and that this was unknown to defendant and his counsel. There was no claim that the prosecution had suppressed that fact or in any way hindered defendant from discovering it.

In *Nielsen*, defendant complained that his counsel discovered an important witness after conclusion of the guilty plea proceedings. There was no claim that the prosecutor suppressed information about the witness in question or that the prosecutor even knew that such potential testimony existed.