395 So.2d 790 (1981)
STATE of Louisiana
v.
Jamie HICKS.
No. 67698.
Supreme Court of Louisiana.
March 2, 1981.
Rehearing Denied April 6, 1981.
*792 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James D. Caldwell, Dist. Atty., Crawford Rose, Asst. Dist. Atty., for plaintiff-appellee.
Richard Burnes, Alexandria, for defendant-appellant.
BLANCHE, Justice.
Defendant, Jamie Hicks, was convicted of the second degree murder of Sheldon Claxton in violation of R.S. 14:30.1. Defendant filed a motion for a new trial and now appeals from the trial judge's denial of that motion and from his conviction, raising five assignments of error before this Court. For the following reasons, we affirm the ruling denying the motion for a new trial and affirm the defendant's conviction.
The evidence adduced at trial shows that on September 16, 1979 at approximately 10:45 p. m., defendant left the Tallulah, Louisiana residence he shared with Ann Spencer in search of Spencer. Spencer had informed defendant she would be home at 10:30 and when she did not return at that time, Hicks left on his bicycle to look for her. He soon found her with Sheldon Claxton, a man she had been dating notwithstanding her relationship with defendant. Claxton and Spencer were returning from a grocery store, and Claxton carried a bag of groceries which he had purchased and also held Spencer's bicycle as they walked down the street. Hicks then confronted the couple and inquired of Spencer concerning her absence from the home. Hicks was armed with a pistol and, according to Hicks, when he first encountered the couple, Claxton reached inside his grocery bag and defendant then pulled his pistol and demanded that Claxton not reach into the bag since defendant did not know what it contained. According to defendant, when he saw that Claxton had merely reached for a soft drink, he then placed his pistol in a front pocket of his sweater.
An argument over Hicks' relationship with Ann Spencer finally erupted into a fight between the two. Both Spencer and Hicks testified that Hicks and Claxton began exchanging blows almost simultaneously. Spencer testified that after the fighting began, the defendant and Claxton were standing close to the side of the street near a ditch when defendant pulled a gun and fired about five shots at Claxton. According to Spencer, Claxton fell to his hands and knees after the shots were fired and defendant tried with his foot to shove Claxton's hands out from under him. Spencer stated that Claxton then grabbed Hicks by the legs, and Hicks began beating Claxton over the head with his pistol. According to defendant Hicks, he pulled his pistol and shot Claxton only after Claxton made two attempts to reach into his pants. Defendant remembers firing his weapon three times. He admits that he tried to knock Claxton's hands out from under him after the shooting and that he struck Claxton twice over the head after he had grabbed defendant's legs. After the shooting was *793 over, Hicks testified he felt Claxton's pockets, and felt a cigarette lighter, a pocket knife, and some change. He then left the scene on his bicycle, but later returned, handing his pistol over to the police who, by that time, had arrived on the scene.
Three witnesses who testified that they were in the area of the shooting at the time it occurred corroborated portions of the above testimony at the trial of defendant. Deborah Frost said she saw defendant fighting with someone, heard shots and saw defendant hitting someone who was in the ditch on the side of the street. Her companion Ronnie Jones testified that he saw Jamie (Hicks) shooting down into the ditch, saw him jump down in the ditch and beat someone with his gun, then heard him shouting to Ann Spencer, "he's dead, now you don't need him." Marie Porter, another witness to the events of that night, stated that she saw Hicks push Claxton into the ditch, shoot him as he came up after Hicks, then jump down and beat Claxton. She also testified that she heard the defendant tell Spencer "he's dead now".
Dr. Kermit Walters testified that the victim, Sheldon Claxton, received three gunshot wounds the night in question, one to his scalp, one to his groin, and a fatal shot to his chest. Claxton also had a black eye resulting from a blow dealt with a blunt instrument or a fist. The victim died in a hospital in Vicksburg, Mississippi from the gunshot wound to the chest.
Defendant's sole defense at trial was that he was acting in self defense when he shot the victim. Hicks testified that he kept his pistol for his own protection and took it with him that night because he though something may have happened to Spencer. His only explanation for pulling the trigger (an action he admitted he intended) was that he saw defendant "going into his pants". Ann Spencer the center of the controversy, testified that she did not see the victim reach into his pants, although her testimony reveals that she did not witness the entire altercation. Spencer did state that defendant owned a pocket knife and that he had it with him earlier that night. She also said that she had told Jamie at some point before the night of the shooting that Claxton had a .357 Magnum. According to Ann Spencer, Claxton had threatened the defendant about a week or two before the shooting, but Spencer did not explain the content of the threat. Also, Spencer related that Claxton had told her the day before the shooting that "he would like to get a chance to swing on him [Hicks]". Spencer testified that Claxton did not, to her knowledge, have his pistol with him the night of the shooting and that she did not see him take his pocket knife out of his pants.
At the hearing of defendant's motion for a new trial, Joanne Claxton testified that she retrieved her brother Sheldon Claxton's personal effects from the hospital in Vicksburg, Mississippi where Claxton died from the gunshot wounds inflicted by defendant Hicks. She was given Claxton's wallet, a set of keys, some change and a pocket knife. Ann Spencer testified at the hearing that Joanne Claxton told her that the above items of Claxton's had been turned over to her.

Assignment of Error Number 1
Defendant first contends that the trial judge erred in denying his motion for a new trial in view of the fact that the prosecution incorrectly responded to an inquiry defendant made in his application for a bill of particulars. In that application, defendant posed the following question to the state: "What, if any, dangerous weapon or instrument was found on the victim at the scene of the crime during the commission of the alleged crime or during the investigation of the crime charged." The state responded: "No dangerous weapon of any type was found upon the victim." Defendant argues that this response was incorrect and that the state was thereby withholding evidence favorable to the accused and denying defendant due process of law in violation of the rule set out by the United States Supreme Court in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and in Moore v. Illinois, 408 U.S. 786, 92 *794 S.Ct. 2562, 33 L.Ed.2d 706 (1972). The evidence does not support defendant's contention that the state denied him Brady material. A fair inference from the evidence is that defendant knew as much or more about the knife as the state. In any event, any "withheld" evidence did not create a reasonable doubt as to defendant's guilt, and defendant was not denied a fair trial.
At trial, the defendant testified that after shooting Claxton, he felt the deceased's pockets and determined that there was a knife, a cigarette lighter and some change in his pockets. Ann Spencer also testified at trial that the deceased had a knife in his possession earlier that evening. Spencer not only gave this testimony at trial but the defense elicited the same information from her as early as the preliminary hearing.
At the hearing on the motion for a new trial, the deceased's sister, Joanne Claxton, testified for the first time. She stated that she went to the hospital where her brother died and received her brother's personal belongings. Among the items given to her was a folding pocket knife. There is some indication that a member of the Tallulah police force may have known that a pocket knife had been recovered from the victim's body since Joanne Claxton stated at the hearing that "uh, Wilmore was with me" when she received her brother's personal effects. The record of the hearing does not reveal any clue as to the identity of "Wilmore", but the record at trial shows that an Officer Ernest Wilmore of the Tallulah Police participated in the investigation of the shooting at issue and testified at defendant's trial. At defendant's trial, Officer Buddy Cupit, another of the investigating officers, testified that no one searched the shooting victim at the scene because he was seriously wounded.
The state insists that it was not aware of the existence of the pocket knife at the time the defense requested whether a dangerous weapon was found on Claxton. The state maintains that the knife was never in its possession and that it became aware of the existence of the knife at the preliminary examination when the defense elicited testimony from Ann Spencer concerning the knife. The defense alleges that the testimony adduced at the hearing of the motion for a new trial shows that a dangerous weapon was found on the victim and that the state denied defendant Brady material when it stated to them that no dangerous weapon was found on the victim.
It was not conclusively established that the state's response to defendant's request was inaccurate. In addition to this pertinent lack of knowledge of the knife's existence by the state, it is further unknown whether the knife possessed such qualities as to qualify as a dangerous weapon. The pocket knife was never produced at the hearing on the motion for new trial, although the victim's sister testified it was still in her possession. The defense did not otherwise attempt to prove that the knife was a dangerous weapon. Nevertheless, even if it is assumed that all knives are dangerous weapons, the state's response could be construed as a truthful one because to the best of its knowledge no knife was found by the state or any of its agents at the scene of the crime or during the investigation.
According to Brady, supra, "... the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution...". The test for materiality, for purposes of Brady, is whether the omitted evidence creates a reasonable doubt that does not otherwise exist. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); State v. Falkins, 356 So.2d 415 (La.1978).
Considering the evidence at trial, even assuming that the state is guilty of withholding evidence favorable to the accused, we fail to see how this fact deprived the defendant of a fair trial. An admission by the state that a pocketknife had been recovered on the body of the victim, or the production of the knife itself would not, in our view, have created a reasonable doubt as to defendant's guilt in light of the great *795 weight of evidence against this defendant. Hicks himself testified that he shot Claxton after he made two attempts to reach into his pants. At no point did defendant testify that he had any knowledge that the victim had a weapon in his possession that night or that he saw any weapon in the victim's possession. The fact that the victim did have a pocket knife would do little to bolster defendant's self defense argument since defendant was apparently unaware of that fact and only observed the victim reaching toward his pocket. It is also significant that the state did not at any juncture throughout the trial deny that the victim Sheldon Claxton may have had a pocket knife in his possession the night of the incident. The state argued only that, even accepting defendant's contention that Claxton reached for his pocket, such an action did not justify the defendant in responding with gunfire. The introduction of a knife or the admission that a knife was found on the victim would not, therefore, have altered the strength of the state's case against the defendant.
We find it significant that prior to trial the defense was alerted to the existence of the knife from testimony elicited by defendant at the preliminary hearing. Nevertheless, defendant apparently made no attempt to secure the knife despite his knowledge of testimony that a knife existed. The state denies that it knew about the knife at the time defendant requested information concerning any dangerous weapons found on the victim, and it occurs to us that when allegedly exculpatory information becomes equally available to the defense at the time it becomes available to the state, the defendant should not be entitled to complain that the state failed to reveal the evidence to the defense.
In any event, any nondisclosure in this case did not, in our opinion, deprive defendant of a fair trial and the reversal of a conviction under Brady is not called for unless the omission of the undisclosed evidence deprived defendant of his constitutional right to a fair trial. State v. Falkins, supra.
This assignment is without merit.

Assignment of Error Number 2
In defendant's second assignment of error, he argues that the trial judge incorrectly instructed the jury just after the voir dire examination when he gave a preliminary statement of the law, including a detailed definition of second degree murder (the crime with which defendant was charged), but omitting any definition of or reference to manslaughter (a responsive verdict to a charge of second degree murder). Defendant feels that had the judge instructed the jury at that point on the crime of manslaughter, the jury might have been more likely to render a verdict of guilty of manslaughter as opposed to second degree murder. We are not aware of any requirement that the trial judge must inform the jury of responsive verdicts to the crime charged in his preliminary remarks. The jury was well aware that it could have returned a verdict of manslaughter. In closing argument this was brought to their attention by the state, and in the judge's instructions, the charge was again offered and the crime of manslaughter was carefully defined and explained. In addition to there being no merit to this assignment of error, the defendant did not object to the trial judge's instructions and cannot raise any alleged error in those instructions on appeal. State v. Mitchell, 319 So.2d 357 (La.1975); C.Cr.P. art. 841.
This assignment is without merit.

Assignment of Error Number 3
Defendant next argues that the state did not carry its burden of proof that the homicide was not committed in self defense. The defense asserts that the state failed to carry their burden of proof because the scales which measure the burden of proof were materially affected and placed in imbalance by three factors.
The defense again argues the significance of the failure of the state to introduce the pocket knife or any evidence concerning the knife. We have dealt with this argument *796 in discussing defendant's first assignment of error. We again observe that the jury heard evidence concerning the knife, and its production would not have created a reasonable doubt that otherwise did not exist in light of the great weight of the evidence against him.
Defendant secondly contends that witness Ann Spencer felt that she was under pressure from the district attorney's office to testify in a particular manner. Apparently, the defense is arguing that the district attorney prompted Ms. Spencer to testify that the defendant was standing over the victim while the victim was in the ditch, and was firing down on him. The defense feels that this view of the facts was aimed at bolstering the state's contention that the shooting was not in self defense. There is no evidence that witness Ann Spencer was intimidated by the district attorney's office, or that she testified to anything other than the truth. At the hearing on the motion for new trial, Spencer testified that the district attorney told her "if I didn't tell the truth, I could go see my mother and my three children that night because I wouldn't see them no more." Defendant's contention has no merit since this witness testified that the victim was shot standing up, not while he was down in the ditch, and since she repeatedly specified that she told the truth at trial as to what she saw on the night in question.
Finally, defendant asserts that the prosecution misstated that it was the defense's burden to prove self defense in this case. Defendant's contention that the state failed to prove lack of justification because the state advised the jury that the burden of proving self defense was on the defense is also without merit. It is true that in a homicide prosecution where the defendant asserts the defense of self defense, the state must prove beyond a reasonable doubt that the homicide was feloniously committed and was not perpetrated in self defense. State v. Patterson, 295 So.2d 792 (La.1974). We feel that the state has met this burden of proof. (See discussion in Assignment of Error Number 4, below.) Defendant points to the following statement by the prosecution in closing argument as wrongfully shifting that burden of proof: "Now, he also had to show us, assume that he could have shown that, he would have to show that a killing is necessary to save himself from that danger." Defendant did not object to this statement at trial and its propriety cannot, consequently, be raised before this Court for the first time on appeal. State v. Carthan, 377 So.2d 308 (La.1979); C.Cr.P. art. 841.
We find no merit in this argument even if it were before us. When taken in context, the state was merely arguing in the statement at issue in closing argument that the facts did not indicate self defense. Furthermore, the jury was specifically instructed, prior to retiring to consider the evidence in the case, that it was the state's burden to prove beyond a reasonable doubt that defendant did not fire the shots in self defense that led to the victim's death.

Assignment of Error Number 4
Defendant raises the argument here that a new trial should have been granted to defendant under C.Cr.P. art. 851(1) on the grounds that the verdict is contrary to the law and evidence, and under art. 851(5) on the grounds that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal rights. In support of these contentions, defendant adopts his arguments under Assignment of Error Number 3 (discussed above). He further argues that if this Court finds that the alleged errors defendant complains of above and below do not individually entitle him to a new trial they should cumulatively mandate that the court grant him a new trial. Finally, defendant argues that he was deprived of effective assistance of counsel at trial (defendant was represented by an attorney from the Indigent Defender Office at trial, and retained different counsel for appeal). Defendant contends that trial counsel was ineffective as defendant filed his own "legal work" in court as the basis for the only assignment *797 of error in defendant's motion for a new trial.
We hold that the verdict of guilty of second degree murder is clearly supported by the evidence in this case. In reviewing a case to determine whether the evidence supports a conviction, this Court examines the record to determine if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Williams, 389 So.2d 384 (La.1980). The defendant admitted that he intended to pull the trigger to shoot the victim Sheldon Claxton and several witnesses testified that they observed the shooting. Ann Spencer testified that the victim was standing close to the defendant when defendant fired several shots in his direction. The victim subsequently died of the gunshot wounds. A rational trier of fact could certainly have found from this evidence that the defendant had a specific intent to kill or commit great bodily harm and that the state has proven these essential elements of the crime of second degree murder beyond a reasonable doubt. Also, the evidence shows that defendant shot a victim who had not attacked him with any weapon. A rational trier of fact could have found, beyond a reasonable doubt, that based on this evidence the defendant did not kill the victim in self defense.
We reject defendant's argument that a cumulation of errors in the trial below entitles him to a new trial so that the "ends of justice may be served". As noted herein, we have found no such "cumulation" in the trial below. Further, this Court has held that although a trial judge may grant a new trial on the ground that the ends of justice would thereby be served, a denial of a request for a new trial on this ground presents nothing for appellate review. State v. Matthews, 354 So.2d 552 (La.1978); State v. Williams, 343 So.2d 1026 (La.1977).
We will not address defendant's argument on appeal regarding ineffective assistance of counsel. A claim of ineffective assistance of counsel is more properly raised by application for a writ of habeas corpus in district court where a full evidentiary hearing may be conducted. State v. Deloch, 380 So.2d 67 (La.1980).

Assignment of Error Number 5
Defendant finally contends that his conviction should be reversed because the district attorney expressed his personal beliefs and personal opinions in closing argument. Defendant attacks the following statements of the prosecutor in closing argument:
"I can't believe Jamie Hicks when he says he pulled the gun out and fired in rapid succession."
"I don't believe that Jamie Hicks thought he was in imminent danger of losing his life from his own testimony or receiving bodily harm."
"Now, I believe that Jamie Hicks may have lost his head. He may have been in heat of blood, but he wouldn't say it on the stand."
Defendant did not object at trial to these statements of the prosecutor and he cannot argue their propriety for the first time on appeal. State v. Carthan, 377 So.2d 308 (La.1979); C.Cr.P. art. 841. The facts do not present a case where a prosecutor's prejudicial comments in closing argument may be considered to violate federal due process even in the absence of a defense challenge or objection at trial. See State v. Hayes, 364 So.2d 923 (La.1978).
We believe that these statements would not constitute reversible error even should this argument have been properly before this Court. As this Court stated in State v. Procell, 365 So.2d 1484 (La.1978):
"Although it is generally considered erroneous for the prosecuting attorney to declare his individual opinion or belief that the accused is guilty when the accusation is made in such a manner that the jury may understand that the prosecutor's belief is based on evidence dehors the record, such an opinion is permissible if the prosecutor refers to, or it is apparent that his opinion is based on, the evidence of record."
*798 The prosecutor's remarks do appear to be based upon evidence adduced at trial and there is no implication that they are based on his personal knowledge of facts outside of the record. Further, a verdict will not be overturned on the basis of improper argument unless the court is thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Crumholt, 357 So.2d 526 (La.1978). We do not find this to be the case here.
For the above reasons, we affirm the lower court ruling on defendant's motion for a new trial, and affirm defendant's conviction.
CALOGERO, J., dissents for reasons assigned by Dennis, J.
DENNIS, J., dissents with reasons.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
Disclosure to the jury of the fact that a knife was found in the victim's pocket would arguably have enhanced defendant's credibility. Nevertheless, disclosure of that fact to the jury would not have served to justify defendant's conduct, which the jury evidently found to be unreasonable under the circumstances.
As to defendant's argument that the proper standard of materiality in the case of a specific request for relevant evidence is "whether the suppressed evidence might have affected the outcome of the trial", the applicable standard depends on the totality of the facts and circumstances in each case. State v. Sylvester, 388 So.2d 1155 (La.1980). But even if the lower standard of materiality is applicable, the jury's decision not to find defendant guilty of manslaughter on the basis of his conduct would not likely have been affected by disclosure of this particular fact.
I concur in the result.
DENNIS, Justice, dissenting.
To the defendant's question, "What, if any, dangerous weapon or instrument was found on the victim at the scene of the crime, during the commission of the alleged crime or during the investigation of the crime charged?" the State responded, "No dangerous weapon of any type was found upon the victim." Just as in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the defendant in this case made a specific request for relevant evidence. The applicable standard for determining whether the defendant should be entitled to a new trial in this context is whether "the suppressed evidence might have affected the outcome of the trial." United States v. Agurs, 427 U.S. 97, 104, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342, 350 (1976) [emphasis added]. The majority mistakenly applies the standard of materiality applicable in the context of a general request for exculpatory evidence or where no request by the defendant was made, that is, whether "the omitted evidence creates a reasonable doubt that did not otherwise exist." United States v. Agurs, supra, at 112, 96 S.Ct. at 2402, 49 L.Ed.2d at 355. Thus, the majority's statement that "An admission by the state that a pocket knife had been recovered on the body of the victim, or the production of the knife itself would not, in our view, have created a reasonable doubt as to defendant's guilt" does not accord the defendant the review to which he is entitled.
I dissent not only from the standard of materiality applied, but from the manner in which the majority proceeds to find that the defendant was not prejudiced by the State's nondisclosure. The majority fails to appreciate sufficiently the impact the introduction of the knife might have had in increasing the credibility of both Hicks and Spencer. Although there were other eyewitnesses to all or part of the shooting incident, none were close enough to testify how and why the argument and shooting occurred. The verdict reached by eleven of the twelve jurors finding the defendant guilty of second degree murder must then in large part reflect their reluctance to give *799 the testimony of the defendant and his girlfriend much weight. Thus, the defendant was prejudiced to the extent that the admission of the knife would have increased the credibility of Spencer and himself and inclined the jury more favorably toward him as to acquittal or a lesser verdict. Even if a self-defense claim is unsuccessful, an "imperfect" right of self-defense, if shown, may lead the jury to determine that manslaughter, not murder, carries the appropriate punishment. See, W. LaFave and A. Scott, Criminal Law 583-84 (1972). Brady is violated not only when the favorable evidence that was suppressed is material to the defendant's guilt, but when the evidence is material to punishment and would tend to reduce the penalty imposed. Brady v. Maryland, supra, at 87, 83 S.Ct. at 1197, 10 L.Ed.2d at 218-19. Even the prosecutor in his closing argument reminded the jury that it could consider manslaughter in all fairness. In Agurs, the United States Supreme Court opined that non-disclosure in response to a specific relevant request would seldom, if ever, be excusable. United States v. Agurs, supra, at 106, 96 S.Ct. at 2399, 49 L.Ed.2d at 351. I do not feel that the majority has shown that this is one of those few cases in which the non-disclosure should be excused, rather I agree with the defendant that the suppressed evidence might have affected the outcome of the trial.
In State v. Woodruff, 281 So.2d 95 (La. 1973), this Court reversed the defendant's conviction because of the trial court's refusal to order the production of information regarding the presence of a dangerous weapon found on the victim's body. Just as in the instant case, the defendant relied solely on his claim of self-defense. Several witnesses testified that they saw a gun on the floor near the victim's body just after the shooting, but none saw a gun prior to or at the time of the shooting. Also similar to the facts in this case, there was some testimony that the victim reached into his pocket just prior to the shooting. Woodruff, supra, at 97. While the prosecution disclosed the existence of the gun at trial, this Court found that such disclosure did not "adequately compensate for the defense's lack of opportunity to construct its defense of self-defense on the bases of those facts." Id.
The State argues that the prosecutor did not know that a knife had been found on the victim when he answered the defendant's request. Neither does the defendant allege any intentional suppression or misconduct on the prosecutor's part. However, moral culpability of the prosecutor is not the focus of the inquiry to determine if a Brady violation has occurred: it is the character of the evidence, not the character of the prosecutor which is critical. United States v. Agurs, supra, 427 U.S. at 110, 96 S.Ct. at 2400-01, 49 L.Ed.2d at 353. At some point well before trial, the prosecutor knew or should have known that a knife was recovered from the victim's body in the presence of a police officer and that his earlier response was incorrect. See Martinez v. Wainwright, 621 F.2d 184, 187 (5th Cir. 1980) ("That the prosecutor was personally unaware of the existence of the rap sheet does not excuse his misrepresentation to the trial court that a rap sheet was unavailable"); Barbee v. Warden, Maryland Penitentiary, 331 F.2d 842, 846 (4th Cir. 1964) ("And it makes no difference if the withholding is by officials other than the prosecutor. The police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State's Attorney, were guilty of the nondisclosure.") There is a continuing statutory and constitutional duty to disclose exculpatory evidence particularly when specifically requested. La.C.Cr.P. art. 729.3; United States v. Agurs, supra, 427 U.S. at 117, 96 S.Ct. at 2404, 49 L.Ed.2d at 357 (Marshall, J., dissenting). Thus, it was incumbent on the prosecutor to supplement his earlier incorrect response.
The State also argues that the defendant knew of the existence of the knife at least after the preliminary hearing at which Ann Spencer testified that the victim had been armed earlier that evening. It follows then, according to the State, that the defendant had in his power the ability to cure *800 any possible prejudice caused by the State's nondisclosure. I do not find this to be the case.
Spencer's testimony at the preliminary hearing did not reveal that a knife had been recovered from the victim's body. The defendant had believed that the victim was armed since the night of the shooting. Spencer's testimony only supported that belief. Nothing in the record indicates that the defendant was aware that a knife was recovered from the victim and was available for admission at trial before the hearing on the motion for a new trial. Indeed, in light of the State's response, there was no reason for him to persist in further independent investigatory efforts.
A defendant cannot complain that he did not receive a fair trial because of the State's nondisclosure if through diligence he could have cured any attendant prejudice. See State v. Roussel, 381 So.2d 796 (La. 1980). But in light of State's response, the meager investigatory resources available to this indigent defendant, and his incarceration at the time, I believe his actions did not fall below this standard of diligence.
For the reasons outlined above, I respectfully dissent.