DOUCET, Judge.
On the night of August 16, 1981, Ronnie Parks was brutally beaten to death. The crime involved the use of a .38 calibre gun. Leonard Davis was subsequently tried for the crime of second degree murder by a jury. Davis’ brother-in-law, Dennis Holmes, testified for the State and gave testimony damaging to the defendant (the State called eleven witnesses in all, and the other witnesses corroborated Holmes’ testimony).
Shortly after Mr. Holmes’ testimony, Leonard Davis’ court appointed counsel, Louis Cosenza, requested that the Court allow him to withdraw from representation of Mr. Davis.
The basis of Mr. Cosenza’s motion was an ethical one, and counsel felt he could not elaborate. Basically it was that Davis wished to call a witness that for ethical reasons counsel should not and could not call. Mr. Cosenza’s motion was denied.
The trial continued with Mr. Cosenza representing the Defendant, who was found guilty.
Following the trial new counsel was appointed for Leonard Davis. This attorney moved for a new trial, alleging that the trial which resulted in conviction had not been fair and impartial because Mr. Cosen-za, the trial attorney, had not called “a certain witness who the defendant felt was indispensable in proving his innocence, ...”
The witness Leonard Davis wished to call was Dennis Holmes.
At the hearing on the motion for new trial Mr. Cosenza testified that after Holmes had testified, Davis advised counsel that Holmes wished to be recalled as a defense witness so that he could recant his prior testimony. That same day, counsel interviewed Holmes who reiterated his desire to change his testimony. Mr. Cosenza also testified as to his decision not to call Holmes but would not elaborate. Leonard Davis, under oath, waived the attorney-client privilege between himself and Mr. Cosenza. Mr. Cosenza was not satisfied that Davis was fully aware of the consequences of the waiver. Further, he did not think it covered the Cosenza-Holmes conversation.
Dennis Holmes was called to the stand and in very confused and confusing testimony said that he lied at the trial and had advised Davis and his attorney that he wished to change his testimony.
*119 Leonard Davis current counsel, James Mitchell, based his motion for a new trial on the “ends of justice” grounds provided in LSA-C.Cr.P. Art. 851(5). The motion relied for its strength on the assertions of Dennis Holmes that he had purjured himself at trial, and now wished to set the record straight. The motion was denied and Davis appeals that denial, that being the only assignment of error preserved on appeal. Assignment of Error
Although not setting forth his grievance as a specific assignment of error, defendant argues upon appeal, as he did below, that an injustice was done to him when Holmes was not allowed to recant his initial testimony. Admitting that he can offer no new evidence in support of his motion for a new trial, counsel argues that a new trial should be granted on the specific grounds of LSA-C.Cr.P. Art. 851(5). That article in pertinent part provides as follows:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
* * * * * *
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
Several observations should be initially made. It is not the trial court’s assessment of Holmes’ credibility that is directly at issue. Rather the question is whether or not an “injustice has been done the defendant” when the trial judge denied his motion for a new trial. Also, the very wording of Section Five as a catch-all clause indicates that the trial judge must necessarily be given a great degree of discretion in determining whether “the ends of justice” require a new trial. The initial words in that even further solidify this statement — “The court is of the opinion.... ” Taken in the proper context, it is apparent that the court referred to is the trial court.
There appears to be an inconsistency to the manner in which the Louisiana Supreme Court has addressed Art. 851(5) on appeal. For example, note the following language:
“Further, this Court has held that although a trial judge may grant a new trial on the ground that the ends of justice would thereby be served, a denial of a request for a new trial on this ground presents nothing for appellate review. State v. Hicks, 395 So.2d 790 (La.1981).”
That rationale and language has been mirrored in various other decisions, e.g. State v. Toomer, 395 So.2d 1320 (La.1981); State v. Matthews, 354 So.2d 552 (La.1978); State v. Williams, 343 So.2d 1026 (La.1977); State v. D’Ingianni, 217 La. 945, 47 So.2d 731 (La.1950). The aforementioned authorities may all be traced back to language in D’In-gianni, supra, which held that the “ends of justice” argument presented nothing for appellate review. The argument in D’Ingi-anni was primarily an “insufficiency of evidence” allegation, which was at that time considered to be nonreviewable as a question of fact, unless the allegation was that there was no evidence to support the conviction. Now, however, the sufficiency of the evidence question is reviewable upon appeal. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), State v. Byrd, 385 So.2d 248 (La.1980), C.Cr.P. Art. 821 (added by Acts 1982, No. 144 § 1). Additionally, there exist cases which have considered Art. 851(5) to be a question of law and reviewable. e.g. see State v. Randolph, 275 So.2d 174 (La.1973). Other cases not addressing directly the reviewability question have implicitly recognized the power of review by considering the “ends of justice” argument. State v. Linkletter, 345 So.2d 452 (La.1977); State v. Credeur, 328 So.2d 59 (La.1976). These cases and the broadened concept of due process evidenced by Jackson v. Virginia, supra, would appear to support a finding of reviewability regarding an Art. 851(5) claim.
*120 In support of his proposition defendant cites only Linkletter and Credeur, supra. Each of those decisions denied the motion for. a new trial on the ground that the “ends of justice” would be served thereby. Although those cases, similar to the instant one, involved witnesses who purportedly attempted to recant their earlier trial testimony, the factual differences between those cases and the one at hand does not support counsel’s argument.
The jurisprudence has accorded a great deal of weight to the trial judge’s decision to grant or deny the motion for a new trial, and his discretion will not be disturbed in the absence of a clear abuse. Credeur, Randolph, supra. Recantations of trial testimony have been looked upon with the utmost suspicion. State v. Spell, 399 So.2d 551 (La.1981); State v. McDonald, 387 So.2d 1116 (La.1980); Linkletter, supra; State v. Tyler, 342 So.2d 574 (La.1977). In a recent decision of the Louisiana Supreme Court, State v. Clayton, 427 So.2d 827 (La.1983), also a “recantation” case, that court found the recanting witness’ testimony to be “simply unbelievable” because it was “directly contradictory to testimony which she had given twice before and which had been corroborated by another eyewitness.”
In this case, as in D’Ingianni, supra, “all of the evidence taken below has been brought up with the record”, and it shows that Dennis Holmes’ testimony at trial was corroborated by the testimony of the other State witnesses. Holmes, at the hearing on the new trial motion, testified that he had been truthful in his statements to the Grand Jury and the investigator from the District Attorney’s office. It is reasonable to infer that those statements were consistent with Holmes’ trial testimony which seems to have implicated defendant in the death of Ronnie Parker. Therefore, we have at least three prior consistent statements before the “recantation”, in addition to corroboration by other witnesses.
The testimony given by Holmes at both the trial and the hearing on the motion for a new trial rather conclusively indicates that his credibility is highly questionable at best. Defense counsel acknowledged several times that Holmes had given contradictory testimony. Perhaps most revealing are Holmes’ statements which indicate that his only desire is to get his prison time reduced, it mattered little to him as to which story he told.
For the foregoing reasons it is apparent that the trial judge did not abuse his discretion in denying defendant a new trial based upon Holmes’ “new” story. Nor has a showing been made that defendant suffered an injustice from this denial.
AFFIRMED.