DOMENGEAUX, Judge.
Defendant Adam Joseph Armentor, Jr. was indicted by a grand jury for the crimes of armed robbery in violation of La.R.S. 14:64 and aggravated rape in violation of La.R.S. 14:42. On December 12, 1983, after having waived his right to trial by jury, he was tried before Judge Warren E. Hood, who found him guilty as charged. He was sentenced to life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence for aggravated rape and fifty years at hard labor, without benefit of parole, probation or suspension of sentence for armed robbery, with the sentences to run concurrently.
Defendant now appeals on the basis of two assignments of error: (1) Abuse of discretion by the trial judge in denying defendant’s motion for a continuance filed on the day of the trial, and (2) Denying defendant’s motion for a new trial.
FACTS:
On July 22, 1983, Adam Joseph Armentor, Jr., armed with a pistol, robbed the Gulf Station on Lakeshore Drive in Lake Charles and raped the attendant. Defendant signed a confession on July 23, 1983. *403 At his arraignment on September 26, 1983, Armentor pled not guilty and not guilty by reason of insanity. Judge L.E. Hawsey, Jr., at defendant’s request, appointed a sanity commission to determine both defendant’s capacity to proceed with trial and his sanity at the time of the offense. At the hearing to determine defendant’s capacity to proceed, held on October 19, 1983 the court found the defendant competent to stand trial. By the day of the trial, December 12, 1983, the sanity commission had not determined the defendant’s sanity at the time of the offense. One psychiatrist had tentatively diagnosed defendant as a multiple personality and the other made a tentative diagnosis of paranoid schizophrenia. Neither could definitely say whether or not defendant knew the difference between right and wrong at the time of commission of the offense. Defense attorneys asked for a continuance so that the psychiatrists could run the tests they deemed necessary to make such a determination. This motion was denied by Judge Hood. Later, a motion for a new trial was denied, as was a “motion to reconsider denial of motion for new trial.”
Both assignments of error pertain to the discretion of the trial judge denying motions for continuance and for a new trial, hence the assignments will be considered together.
With these assignments of error defendant argues that the trial court’s denial of his motions for a continuance and a new trial deprived defendant of his federal and state constitutional rights to compel the attendance of witness, to put on a defense and to a fair trial.
The motion for continuance was based on the grounds that the doctors, appointed to the sanity commission, informed defense counsel, extrajudicially, that “their initial opinion was that defendant was insane at the time of the offense but thought additional testing, examination and interviews were required.” Therefore, the defendant wanted to continue the case until such time as these additional tests could be performed. The trial court denied the defendant’s motion for continuance noting that not only was the motion not timely filed in accordance with La.C.Cr.P. Art. 707, but that the defense had known for at least two weeks that they were going to file such a motion; and yet, during that two week period no attempt had been made to get the doctors to examine the defendant. The judge also noted in his ruling that he had heard no testimony during the hearing from the doctors that they did not have an opinion and would need further time for examination.
La.C.Cr.P. Art. 712 says that a motion for a continuance may be granted in the discretion of the court, if there is good ground therefor. The granting or denial of a motion for a continuance rests within the sound discretion of the trial judge and his ruling will not be disturbed absent an abuse of discretion. Whether or not a refusal to grant a continuance was justified depends primarily on the circumstances of the particular case. State v. Simpson, 403 So.2d 1214 (La.1981). In order to demonstrate abuse of discretion, it must be shown that specific prejudice was caused by the denial. State v. Huizar, 414 So.2d 741 (La.1982).
Inasmuch as the defense knew of the grounds for requesting the continuance for several weeks before the day of the trial, and as there was no testimony from the doctors that additional testing and examinations were necessary in order to form an opinion as to the defendant’s sanity at the time of the offense, the trial judge did not abuse his discretion in denying the defendant’s motion for a continuance. Thus, this assignment of error lacks merit.
In his motion for a new trial, the defendant alleged that since the doctors did not complete their examination of defendant’s sanity at the time of the alleged offense, the ends of justice would be served by the granting of a new trial. The trial judge denied the motion for a new trial noting that neither doctor testified that the defendant was incapable of distinguishing right from wrong at the time of the offense, and that their testimony concerning *404 a need for further psychiatric examination was not for the purpose of determining whether or not the defendant knew right from wrong at the time of the alleged offense, but that it was for the purpose of making diagnosis as to whether or not he did have, or did suffer from multiple personality.
The jurisprudence has accorded a great deal of weight to the trial judge’s decision to grant or deny the motion for a new trial, and his discretion will not be disturbed in the absence of a clear abuse. State v. Davis, 431 So.2d 117 (La.App. 3rd Cir.1983).
At trial, Dr. Morin, a member of the sanity commission, testified:
“A. On 10/15/83, I made a tentative diagnosis of schizophrenic reaction paranoid type.
Q. That was apparent in Mr. Armentor on July 22, 1983?
A. Yes, sir. It dates back to 1980.
Q. I understand. Was Mr. Armentor, based on your tentative opinion, capable of distinguishing between right and wrong on July 22, 1983 because of this paranoid schizophrenia?
A. Not if he was psychotic, no, sir.
Q. And your tentative opinion was he was psychotic?
A. It was a tentative opinion.
Q. I understand that, Doctor.”
Under cross-examination, Dr. Morin further testified:
“BY MR. FREY:
Q. Doctor, can you tell this Court that, on July 22, 1983, the defendant did not know right from wrong?
A. Not with certainty.
Q. And it is your testimony that he might have been a paranoid schizophrenic, is that correct?
A. Yes, sir.
Q. And that he could have been suffering from this condition on July 22nd

A. Yes, sir.
Q. ... but you cannot definitely say that he was?
A. No, sir.
Q. You cannot, even, in your professional opinion, say that he was?
A. No, sir.
Q. Did you perform any tests on the defendant?
A. No, sir, I did not.
Q. Did ... how long was your interview on October 15th?
A. I imagine thirty-five, forty minutes.
sfc * ⅞: ⅜ ⅜ ⅝
Q. Did he appear to you, at that time, to be schizophrenic?
A. No, sir. I felt, on October 15th, at the time that I talked with him that he fulfilled the Bennett criteria — he was sane.
Q. At the time, was he on any medication?
A. It’s not reflected in my notes, but I don’t believe he was on any medication.
Q. Is he on any medication at this time?
A. This, I don’t know.
Q. Have you prescribed any medication for him?
A. No, sir, I have not.
Q. And you cannot tell this Court, with any degree of professional certainty, that, on July 22nd of this year, when this crime was committed, the defendant did not know right from wrong and was suffering, at that time, from a mental disease or defect, is that correct?
A. No, sir.”
Dr. Morin was then examined by the Court:
“Q. Doctor, a person who is suffering from paranoid schizophrenia, does he know the difference between right and wrong?
A. Sometimes they do, Your Honor, but, again, it’s very difficult to say; but the thing I felt we could put to rest, because a paranoid schizo *405 phrenic, for example, can be in remission, look very good from a clinical point of view, but, if you give them the testing, such as, a Rosh-eaux and any of the projective tests, then we can determine he is or not. That is what’s unsure.
What I’m getting at, the diagnosis of paranoid schizophrenia, in itself, does not carry with it or doesn’t warrant the conclusion that such a person does not know right from wrong? <3
No, not necessarily. >
Now, you used the word ... you said, if he was psychotic? .©
Well, paranoid schizophrenia ... i>
Now, what ... <©
... is a psychosis, but there are some psychoses ... again, it depends if that particular individual, for example, at that particular time is responding to a voice or a delusion. Then you see, he doesn’t know what’s right from wrong, but he may not have been. I don’t know. í>
All right. Well, let me ask you this: Suppose the defendant, in this particular case, had committed the armed robbery and had used a ski mask in the commission of the offense, would this be any indication that he did know right from wrong at the time if he masked his features. «©
Yes, sir, it could certainly point in that direction.
It would point to which direction? That he did know ... <3
That he ... that he knew that this was wrong.
What if, upon coming out of the establishment that had been robbed, he met a deputy sheriff near the door, with the ski mask off, of course, and, upon inquiry by the deputy sheriff, he said that he was an attendant at the store, and the trash bag that he had in his hand, he was carrying it out to dispose of it, whereas, in fact, it contained money, <© would that be an indication of whether or not that he knew right from wrong at that time.
A. It seems it would be an indication that he would know that what he did was wrong and was trying to hide it.
Q. What if the money that was taken in the robbery, that he had placed it in an old icebox ... an unused icebox outside the residence in which he was living, would this be an indication that he knew right from wrong, or not?
A. It would seem to me to indicate that he knew what he was doing.”
Dr. Willis, the second psychiatrist appointed to the sanity commission, testified, on direct examination that he had reached a tentative opinion that the defendant suffered from multiple personalities. On cross-examination, he testified:
“Q. And you cannot say that the defendant was legally insane at the time of the commission of this offense, is that correct? You have not even reached a definite diagnosis as to multiple personality disorder?
A. That’s correct.
Q. And you cannot say that he did not know right from wrong on the occasion in question, is that correct?
A. That’s correct, unless I knew everything.
Q. Unless what, sir?
A. Unless I knew all the information. Unless I could make a definite diagnosis.
Q. And this tentative opinion is based on your review of the records provided to you by the defense and two thirty-minute interviews over a period of two months with the defendant, is that correct?
A. Yes.”
In light of the doctors’ testimony that they could not opine that the defendant was legally insane at the time of the commission of the offense, the trial judge’s *406 refusal to grant a new trial does not constitute an abuse of discretion. Therefore, we find no merit to either of defendant’s assignments of error and affirm his conviction.
AFFIRMED.