484 So.2d 698 (1985)
STATE of Louisiana
v.
Billie A. GREEN.
No. KA 85 0863.
Court of Appeal of Louisiana, First Circuit.
December 26, 1985.
*699 Bryan Bush, Dist. Atty. by Lou Daniel, Douglas Simmons, Asst. Dist. Attys., Baton Rouge, for plaintiff-appellee.
*700 Brady Jones, Asst. Public Defender, Public Defenders' Office, Baton Rouge, for defendant-appellant.
Before CARTER, SAVOIE and ALFORD, JJ.
SAVOIE, Judge.
Defendant, Billie Green, appeals his conviction and sentence for attempted manslaughter. We affirm.
Shortly after midnight on June 27, 1984, three L.S.U. students left the Bengal Lounge in Baton Rouge and were proceeding toward their car parked on Taylor Street. On the way there two of the students stopped to urinate in or near the defendant's yard. The defendant's girlfriend observed this activity and became involved in an argument with the students. Shortly thereafter, defendant became involved in the argument and a fight ensued. Several witnesses testified that the victim (one of the students) won the fight and then withdrew to his car. After starting his car and proceeding toward defendant's yard, the victim stopped, opened the door, and attempted to persuade his two friends to leave with him. At this point, defendant, who was supplied with a pistol, fired one shot into the hood of the victim's car. He then walked around to the driver's side of the car, busted the window with the butt of the gun, and shot the victim in the face at close range. The victim, struck in the jaw with the bullet lodging in his neck, was seriously injured and required hospitalization. The defendant then fled the scene, driving to New Orleans several hours later. The next day, after talking with an attorney, the defendant turned himself in to the police.
Conversely, defendant and his girlfriend testified that the students who urinated in their yard started the fight. They stated that one of the students produced a knife and cut the defendant's girlfriend on the wrist. They also testified that the victim struck the defendant with the car, forcing the defendant to shoot the victim in self-defense.
Defendant was charged by bill of information with one count of attempted second degree murder in violation of LSA-R.S. 14:27 and LSA-R.S. 14:30.1. At arraignment he pled not guilty and elected to be tried by jury. After trial, the defendant was found guilty of attempted manslaughter in violation of LSA-R.S. 14:27 and 14:31. At his sentencing, the state moved to enhance defendant's sentence pursuant to La.C.Cr.P. art. 893.1 and LSA-R.S. 14:95.2. As a result thereof, defendant received a sentence of five years at hard labor without benefit of parole, probation, or suspension of sentence, to run consecutively with a sentence of two years at hard labor without benefit of parole, probation, suspension of sentence, or good time.
Defendant appealed alleging twelve assignments of error. However, having failed to brief Assignments of Error Numbers two, seven, nine, ten, and twelve, they are considered abandoned.[1] Uniform RulesCourts of Appeal, Rule 2-12.4. As such, defendant now asserts that:
1. The trial court erred when it refused to quash the subpoena of the defendant's former attorney.
3. The trial court erred when it allowed the defendant's former attorney to testify as a state witness.
4. The trial court erred in overruling a defense motion for a mistrial.
5. The trial court erred when it overruled defense objection to irrelevant testimony.

*701 6. The trial court erred when it allowed state's exhibit S-1 into evidence over defense counsel's objection.
8. The trial court erred when it overruled defense objection to irrelevant testimony.
11. The trial court erred when it granted the state's motion to sentence the defendant under article 893.1.

ASSIGNMENTS OF ERROR NUMBERS 1. & 3.
Defendant asserts that the trial court erred in failing to quash a subpoena received by Mike Walsh, defendant's former attorney. He also argues that it erred in allowing Mike Walsh to testify as the State's witness. Based upon the following facts, we find that the trial court was correct as a matter of law in allowing the subpoena to stand and Walsh to testify.
Sometime after the shooting, defendant contacted Mike Walsh, a Baton Rouge attorney who handled an unrelated civil matter for the defendant. Walsh advised the defendant to return to Baton Rouge and turn himself in to the police. The defendant and his girlfriend went to Walsh's office to confer with him when they returned to Baton Rouge. Prior to leaving, defendant requested if he could leave a box of personal items in Walsh's office. After defendant had turned himself in to the police, Walsh noticed that there was a gun in the box. Walsh immediately turned the gun in to the police.
Subsequently, defendant obtained another attorney. At trial, Walsh was subpoenaed by the State to testify. He immediately filed a motion to quash the subpoena, asserting that as defendant's former attorney of record, to testify would violate the attorney-client privilege.
At the hearing on the motion to quash, the prosecutor, noting LSA-R.S. 15:475,[2] stated that no privileged communications would be questioned. The prosecution sought only to determine if Mr. Walsh ever represented the defendant and if he ever brought and delivered a weapon to the Baton Rouge Police Department. Walsh and defendant argued that answering such questions would violate the attorney-client privilege. The trial court, after reviewing the pertinent statute and jurisprudence, found that those questions alone would not violate the attorney-client privilege. It also noted that questions concerning privileged communications would not be permitted. At trial, when Walsh testified about his discovery of the gun and subsequent delivery of it to the police, defendant again noted his objection.
The record reflects that Walsh's testimony was confined to the fact that he represented the defendant[3], that the defendant left a gun in his law office, and that he turned the gun in to the police department. While the defendant argues vigorously that requiring his former attorney to testify constituted a violation of the attorney-client privilege, we find such allegation is without merit. In re Ryder, 263 F.Supp. 360 (E.D.Va.1967).

ASSIGNMENT OF ERROR NUMBER 6.
Defendant next argues that the trial court erred in admitting State's Exhibit S-1, the gun into evidence despite defense counsel's objection. Such argument has two bases. First, defendant argues that the trial court erred when it allowed Walsh to testify regarding his handling of the gun. Having previously disposed of this issue we need not address it here. Secondly, defendant contends that the trial court, *702 misinterpreting a stipulation between prosecution and defense counsel, erred in allowing the State to introduce the gun into evidence.
The record reflects that the defense and the prosecution entered into the following stipulation:
MR. BANKSTON: The stipulation is as follows: that the gun which has been marked as S-1, the two-spent Luger casings, which are S-9B and S-9A, and the spent copper jacket, which has been labeled as S-5, were submitted to the Louisiana State Police Crime Lab. There, a man by the name of Ronald C. Jewell, a forensic scientist, tested these items and if called to testify today, he would be able to state that the two cartridge casingsagain, these are S-9A and S-9B, and the bullet which has been labeled as S-5, were determined to have been fired from the Browing pistol which is S-1.
Subsequently, when the prosecution attempted to introduce S-1 into evidence, defense counsel objected. He argued that a proper foundation had not been laid to introduce S-1 because it had not been properly identified.
The record reflects that the gun Walsh turned over to the police was the weapon which the forensic scientist tested. Based upon this fact and the stipulation's clear language, it is apparent that the necessary information to link S-1 with the gun used by the defendant on the night in question was adduced. We find the trial court was correct in its that ruling the gun was admissible. Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 4.
Defendant next argues that the trial court erred in overruling his motion for a mistrial, based on the prosecution's failure to comply with discovery motions.
In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court stated: "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution...." 83 S.Ct. at 1196-1197. Moreover, Louisiana Code of Criminal Procedure article 729.5(A) provides:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
Where the state fails to comply with discovery provisions requesting exculpatory Brady evidence in its possession, the defendant is entitled to a reversal if he has been prejudiced by the state's failure to disclose. State v. Davis, 399 So.2d 1168, 1171 (La.1981); and State v. Meshell, 392 So.2d 433, 435 (La.1980). However, reversal of a conviction under Brady is not required unless the omission of the undisclosed evidence deprived the defendant of his constitutional right to a fair trial. State v. Hicks, 395 So.2d 790, 795 (La. 1981). The test for materiality, for purposes of Brady, is whether the omitted evidence creates a reasonable doubt that does not otherwise exist. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); State v. Falkins, 356 So.2d 415 (La.1978), cert. denied, 439 U.S. 865, 99 S.Ct. 190, 58 L.Ed.2d 175 (1978).
Herein, Detective Callahan, a state witness, testified he believed that defendant's photograph was taken shortly after he turned himself in to the police. Upon discovering this information, defense counsel stated that the photograph would be Brady material and requested a copy immediately. The prosecutor stated that he had no knowledge of such photograph and that the only photos in the state's possession were contained in the file, to which defense counsel *703 had complete access. However, the trial court ordered the prosecution to make the photograph available to the defendant as soon as possible. At trial the next day, the prosecution was unable to produce the alleged photograph. However, negatives of the defendant's "mug pictures" were furnished. These were taken at approximately the same time that the photograph in question was allegedly taken. Defense counsel, not satisfied with the material given, moved for a mistrial. Defendant argues that he is entitled to a mistrial because the prosecution suppressed exculpatory evidence. Defendant, alleging self-defense, argues that the photograph which depicted the injuries received by him in his fight with the victim, was exculpatory evidence necessary to his case.
We find that defendant was not prejudiced by the omission of this alleged photograph. The record reflects that neither the state nor the defendant was aware of the photograph's alleged existence until Detective Callahan mentioned it during the trial.
Furthermore, the "mug pictures" furnished defendant should depict the same injuries as the alleged photograph in question. The "mug pictures," together with the testimony of other corroborating witnesses, revealed that defendant was clearly the loser in the fight. As the jury was obviously aware of this fact, we fail to see how the omission of this alleged photograph could have deprived defendant of a fair trial. The production of the alleged photograph would not, in our view, have created a reasonable doubt as to the defendant's guilt in light of the great weight of evidence against the defendant. See State v. Hicks, supra. Accordingly, this assignment of error is without merit.

ASSIGNMENTS OF ERROR NUMBERS 5. & 8.
Defendant next asserts that the trial court erred in overruling defense objections to irrelevant testimony on two occasions. The first occasion dealt with a series of questions on direct examination dealing with the nature and extent of the victim's injuries; secondly, during the prosecution's cross-examination of defense witness Darryl Seaberry, who testified that he witnessed the shooting. We find this testimony relevant.
Relevant evidence is defined by LSA-R.S. 15:441 as follows:
"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."
Moreover, the trial court's determination regarding the relevancy of evidence will not be overturned absent a clear abuse of discretion. State v. Stramiello, 392 So.2d 425, 427 (La.1980).
On the first occasion, the prosecution was attempting to prove attempted second degree murder. Such crime requires that the offender have "a specific intent to kill or to inflict great bodily harm." LSA-R.S. 14:30.1(1). Evidence of the serious injuries sustained by the victim herein was clearly probative in proving that the defendant intended to kill or inflict great bodily harm. State v. Denney, 352 So.2d 204, 205 (La.1977). While there is a possibility that the prejudicial effect of this evidence upon a jury could outweigh its probative value, we do not find in this instance that the victim's testimony was so inflammatory as to be unduly prejudicial or that it distracted the jury from the main issue in the trial. See State v. Redwine, 337 So.2d 1041, 1045 (La.1976).
We also reject defendant's assertion that this was an attempt by the state to excite the jury's emotions. The Third Circuit in State v. Mayberry, 457 So.2d 880, 883 (La. App.3d Cir.), writ denied, 462 So.2d 191 (1984) stated:
In proving crimes requiring intent, it is not unusual to permit the jury to view wounds, scars, photos and demonstrative evidence that are relevant to show intentional use of force or violence. The use of such evidence is left within the sound discretion of the trial judge, who can best *704 decide whether they serve a proper place in the jury's enlightment; his ruling in this respect will not be disturbed in absence of an abuse of discretion. [Citation omitted]
Based upon the record herein, we find that the trial court properly allowed the testimony to be adduced.
Secondly, defendant objects to the cross-examination testimony of Darryl Seaberry, an alleged witness to the shooting incident. When a witness has been intentionally sworn and has testified to any single fact in his examination in chief, he may be cross-examined upon the whole case. LSA-R.S. 15:280. The prosecution has the right to rebut the evidence adduced by defendant, LSA-R.S. 15:282, and in such endeavor may cross-examine witnesses offered by the defendant as to any relevant or material issue. State v. James, 394 So.2d 1197, 1203 (La.1981). The record reflects that Seaberry was called to testify by defendant. Under cross-examination, defendant objected when the prosecutor asked Seaberry if, after the shooting, he went to the police station to inform them that he was a witness thereto. Defense counsel objected, arguing that the question was irrelevant. On the contrary, we find that the question was clearly relevant. The record reflects that the defendant asked Seaberry to testify when they met in jail. By asking Seaberry if he ever reported the fact that he witnessed the shooting to the police, the prosecution was trying to infer that he may not have seen the shooting, or perhaps that his testimony was biased.
Reading the entire record, we find that the trial court did not abuse its discretion in either occasion. Therefore, these assignments of error are without merit.

ASSIGNMENT OF ERROR NUMBER 11.
Lastly, defendant asserts that the trial court erred in granting the state's motion to enhance defendant's sentence under LSA-C.Cr.P. art. 893.1 and LSA-R.S. 14:95.2. Specifically, he argues that "the state should not be able to request enhancement of the penalty after conviction because doing so unduly prejudices the defendant in preparation for his trial as it was not made part of the requirements of bill of information set forth in La.C.Cr.Pro. Article 464 and it is an infringement on the judge's constitutional power to determine a sentence."
We pretermit discussion of this assignment of error as it relates to LSA-C.Cr.P. art. 893.1 due to the fact that we reverse the sentence on other grounds. Moreover, we note that Article 893.1 is a sentencing statute which limits the judge's sentencing discretion when felonies are committed with a firearm. It's application is limited to situations where "suspension of sentence is not otherwise prohibited." In the present case, the presentence investigation revealed that defendant had been convicted of a previous felony. As a second felony offender, defendant is not eligible for a suspended sentence under LSA-C.Cr.P. art. 893. Therefore, since his suspension was "otherwise prohibited," his sentence could not be enhanced by application of Article 893.1. State v. Williams, 475 So.2d 392 (La.App. 1st Cir.1985).
Addressing defendant's assignment of error, we hold that because the bill of information did not charge defendant with LSA-R.S. 14:95.2, firearm use in commission of the attempted second degree murder, that statute may not be applied in sentencing him. See State v. Jackson, 480 So.2d 263 (La.1985).[4]
We therefore reverse the sentence and remand for re-sentencing in accordance with law.
CONVICTION AFFIRMED; SENTENCE REVERSED; REMANDED FOR RE-SENTENCING.
NOTES
[1] Assignments of error not briefed are as follows:

2. The trial court erred when it overruled defense objection to an improper and leading question.
7. The trial court erred when it allowed state's exhibit S-11 into evidence over defense counsel's objection.
9. The trial court erred when it sustained the prosecutor's objection to irrelevant testimony.
10. The trial court erred when it overruled defense objection to the court's providing further jury instructions.
12. The trial court erred when it imposed an excessive sentence.
[2] LSA-R.S. 15:475 provides:

No legal adviser is permitted, whether during or after the termination of his employment as such, unless with his client's express consent, to disclose any communication made to him as such legal adviser by or on behalf of his client, or any advice given by him to his client, or any information that he may have gotten by reason of his being such legal adviser.
[3] In State v. Hayes, 324 So.2d 421, 423 (La. 1975), cert denied, 425 U.S. 962, 96 S.Ct. 1747, 48 L.Ed.2d 207 (1976), the Louisiana Supreme Court held that the fact that an attorney represented a given client is a matter of public record not covered by the attorney-client privilege.
[4] The Supreme Court consolidated eight cases which presented issues relative to the application of R.S. 14:95.2 and/or La.C.Cr.P. art. 893.1: State v. Jackson, XX-X-XXXX; State v. Harris, 84-KO-1828; State v. Hogan, 84-K-1847; State v. Barberousse, 84-K-2146; State v. Street, 85-K-0614; State v. Blache, 85-K-0540; State v. Decambre, 85-K-0853; and State v. Kennedy, 85-KK-0428. In several cases, the Court merely adopted its ruling in other cases.